272 F.2d 842
 Jeannette H. JENNINGS, John R. Bacon, and Continental Illinois National Bank and Trust Company of Chicago, Executors of the Estate of Ode D. Jennings, deceased, and Jeannette H. Jennings, Plaintiffs-Appellees
v.
UNITED STATES of America, Defendant-Appellant.
 No. 12620.
 United States Court of Appeals Seventh Circuit.
 December 17, 1959.
 
 Charles K. Rice, Asst. Atty. Gen., Arthur I. Gould, Lee A. Jackson, Robert N. Anderson, Attorneys, Department of Justice, Washington, D. C., Robert Tieken, U. S. Atty., Chicago, Ill., for appellant.
 Elden McFarland, Washington, D. C., Melvan M. Jacobs, Joseph E. Farmar, Chicago, Ill., for appellees.
 Before HASTINGS, Chief Judge, and DUFFY and PARKINSON,[1] Circuit Judges.
 HASTINGS, Chief Judge.
 
 
 1
 This case concerns the legal nature of certain payments made to Ode D. Jennings and Jeannette H. Jennings (taxpayers) by O. D. Jennings and Company, a corporation. Taxpayers claimed that such payments were merely the partial repayment of a series of loans made by them to the corporation and that they were non-taxable. The Commissioner of Internal Revenue contended that these payments were taxable dividend distributions under Section 115 of the Internal Revenue Code of 1939, 26 U.S.C.A. § 115. The Commissioner made a deficiency assessment which taxpayers paid and then filed claim for refund in the district court. The district court held that the amounts received by taxpayers were repayment of loans and that the deficiency taxes were erroneously assessed and ordered an appropriate refund with interest. From this decision the Government has appealed. Jeannette H. Jennings, John R. Bacon and Continental Illinois National Bank and Trust Company of Chicago, as executors of the estate of Ode D. Jennings, deceased, and Jeannette H. Jennings are appellees herein.
 
 
 2
 The ultimate issue before us is whether the advances in question constituted loans to the corporation or were additional capital investments by the taxpayers. That this question is not a new one is evidenced by the many decisions of this and other courts in delineating the various indicia as a guide in determining the intention of the parties in transactions involving closely-held corporations.
 
 
 3
 Without attempting again to evaluate these various holdings,[2] it is sufficient to say that they clearly point out that the intention of the parties is a major factor in determining the true nature of the relationship between the parties and the legal effect of the facts as found by the trial court. While no single test can provide the answer, Arlington Park Jockey Club, Inc. v. Sauber, 7 Cir., 1959, 262 F.2d 902, yet the courts have looked to, "among other factors, the book entries, the debt-equity ratio, the presence of an agreement to maintain proportionality between the advances in question and the acknowledged risk capital, and the expectation of repayment." Ortmayer v. C. I. R., 7 Cir., 1959, 265 F.2d 848, 854.
 
 
 4
 The following facts, amply supported by the record, are relevant to the issue at hand.
 
 
 5
 O. D. Jennings and Company (the corporation) is an Illinois corporation organized in 1923. At all times material to this case, all of the capital stock was owned by Ode D. and Jeannette H. Jennings (husband and wife), with the exception of nominal amounts owned by other officers and directors, which amounts varied slightly from time to time.
 
 
 6
 In the middle and late 1930's, the corporation found a great need for working capital. Beginning in 1935, and continuing through 1940, taxpayers made a series of cash loans, totalling $325,000, to the corporation to provide necessary working capital. These advances were evidenced by a series of interest-bearing promissory notes of the corporation. The first two had stated due dates (March 24, 1938), but the remaining sixteen were demand notes. There is no evidence of any repayment of the principal or interest on these notes prior to 1948.
 
 
 7
 On November 24, 1942, at a special meeting of the board of directors, it was agreed that because of wartime conditions, the corporation would be unable to repay the notes without depleting its working capital. Therefore, in a further attempt to preserve working capital, pursuant to a resolution of the board of directors, taxpayers were to surrender their notes to the corporation. It was agreed that the amount of the liability entry on the books of the corporation (Notes Payable) was to be transferred to a new net worth entry, "Contributed or Paid-in Surplus." It was also agreed that each of the remaining stockholders of the corporation would contribute a prorata amount to that account. The minutes expressly stated that such amounts shall "be repaid when the Board of Directors deems such action advisable."
 
 
 8
 Although the minutes announced that the notes would be surrendered and canceled, it appears from the taxpayer's exhibits in the record that the notes were not physically canceled on their face.
 
 
 9
 Attached to the minutes was a "memorandum" consisting of two short paragraphs citing among other things the factual situation in Weaver v. Commissioner of Internal Revenue, 9 Cir., 1932, 58 F.2d 755, in which the payment to stockholders out of an account entitled "contributed surplus" was held not taxable as a dividend. Taxpayer has urged that this "memorandum" and the attempts precisely to follow it in the transaction in question are strong evidence that the parties intended a continuing creditor relationship between taxpayers and the corporation. The minute book also indicates that on December 3, 1940, December 5, 1941, and November 24, 1942, taxpayer waived accrued interest on the notes in question.
 
 
 10
 During the period 1942 until 1946, the corporation engaged in war production. It enjoyed considerable success in the post-war period, and on October 18, 1948, the Board of Directors voted to repay partially each of those who had contributed to the account "Contributed or Paid-in Surplus." At such time $5,000 was paid to Ode D. Jennings and $4,931.09 to Jeannette H. Jennings. On December 28, 1948, additional proportional repayments were made, including $49,999.99 to Ode D. Jennings and $49,311.30 to Jeannette H. Jennings. These payments totaled $109,242.38.
 
 
 11
 In the interim between 1942 and these repayments, one of the stockholders who held a nominal amount of stock, but who had contributed in proportion to the "Contributed or Paid-in Surplus" account and who had left the corporation, returned his share of stock to the corporate treasury; and his contribution to "Contributed or Paid-in Surplus" was returned to him.
 
 
 12
 In a joint income tax return for 1948, taxpayers did not include as income the $109,242.38 they had received from the corporation. On or about January 25, 1952, taxpayers received from the Internal Revenue Agent in Charge at Chicago, Illinois, the report of the Examining Revenue Agent, disclosing a net income of $152,315.12 and an income tax liability thereon of $79,169.02, resulting in a deficiency in income taxes of $64,398.10 for the year 1948. The Commissioner's position was that the 1948 payment was a taxable distribution of dividends. On June 24, 1952, taxpayers paid the deficiency together with interest of $12,457.94, a total of $76,856.04.
 
 
 13
 The Government concedes that the findings of fact by the trial court have sufficient support in the record. It argues, however, that the court erred in concluding therefrom that the legal effect of such findings warranted the conclusion that the advances in question were loans and not contributions to capital in the light of many of the objective tests controlling such a determination.
 
 
 14
 However, the Government does not contend that the advances were contributions to equity capital ab initio. It admits that until the action of November 24, 1942, such sums were loans. It argues that the transfer on that date from the liability account to the special net worth account extinguished the debtor-creditor relationship and marked the beginning of a proprietary relationship. It cites a number of the standard indicia claimed to exist here in support of this contention.
 
 
 15
 We have held, on an issue similar to this, that the problem before us involves a "mixed question of law and fact" and that we may review "the legal effect of the facts as found by the trial court." Ortmayer v. C. I. R., 7 Cir., 1959, 265 F. 2d 848, 854. See also, Bogardus v. Commissioner, 1937, 302 U.S. 34, 39, 58 S.Ct. 61, 82 L.Ed. 32; Helvering v. Tex-Penn Co., 1937, 300 U.S. 481, 491, 57 S.Ct. 569, 81 L.Ed. 755; Helvering v. Rankin, 1935, 295 U.S. 123, 131, 55 S.Ct. 732, 79 L.Ed. 1343. The facts in the instant case are not in dispute, and we are not called upon to determine whether they find sufficient support in the record or are clearly erroneous, as was the situation in Zeddies v. C. I. R., 7 Cir., 1959, 264 F.2d 120, 126.
 
 
 16
 We hold that the district court reached the correct result in this case on the basis of its findings. Support for this is found in the various corporate resolutions and minutes relating to this transaction; the acknowledged obligation of repayment; the undisguised attempt to follow the approved technique in the Weaver case (looked to here by us as evidence of intention of the parties rather than as a controlling legal precedent); and the significant fact that all parties agree that at the outset the advances were undeniably loans and not contributions to capital.
 
 
 17
 We have considered the other factors urged by the Government as indicating a contrary purpose and intent. However, in our consideration of the transaction as a whole, we must conclude that the post-1942 conduct of the parties did not effect a change in their debtor-creditor relationship.
 
 
 18
 We hold that the district court did not err in holding that the payments to tax-payers in question constituted the repayment of loans and that no part thereof is includible as taxable income. The decision of the district court is in all things
 
 
 19
 Affirmed.
 
 
 
 Notes:
 
 
 [1]
 While Judge Parkinson participated in the hearing of oral arguments and a conference of the division judges above-named, he was not present at the time of, and did not participate in, the adoption of this opinion. He concurred in the result reached in this opinion
 
 
 [2]
 Typical of such cases are Lee Telephone Co. v. Commissioner of Internal Rev., 4 Cir., 1958, 260 F.2d 114; Gilbert v. Commissioner of Internal Revenue, 2 Cir., 1957, 248 F.2d 399, 406; Crawford Drug Stores v. United States, 10 Cir., 1955, 220 F.2d 292; Schnitzer v. Commissioner of Internal Revenue, 1949, 13 T.C. 43, affirmed per curiam, 9 Cir., 1950, 183 F.2d 70; Maloney v. Spencer, 9 Cir., 1949, 172 F.2d 638, 641; Green Bay & W. R. Co. v. Commissioner of Int. Rev., 7 Cir., 1945, 147 F.2d 585; Commissioner of Internal Revenue v. Meridian & Thirteenth R. Co., 7 Cir., 1942, 132 F.2d 182, 186 and Arthur R. Jones Snydicate v. Commissioner of I. Revenue, 7 Cir., 1927, 23 F.2d 833, 835