Walter I. Dodd and Amelia Lee Dodd v. Commissioner.
Dodd v. Commissioner
Docket No. 80733.
United States Tax Court
T.C. Memo 1961-8; 1961 Tax Ct. Memo LEXIS 338; 20 T.C.M. (CCH) 37; T.C.M. (RIA) 61008; January 23, 1961
*338 N. A. Townsend, Jr., Esq., 401 Oberlin Road, Raleigh, N.C., for the petitioners. James E. Johnson, Jr., Esq., for the respondent. TIETJENS
Memorandum Findings of Fact and Opinion TIETJENS, Judge: The Commissioner determined deficiencies in income tax as follows: Year
Amount
1955
$3,232.07
1956
3,454.57
1957
2,699.85
The questions for decision are whether certain advances made to or for the benefit of a corporation in which petitioner Walter I. Dodd had an interest, are deductible either as ordinary and necessary business expenses or as business bad debts, or were such amounts nondeductible because, as contended by the Commissioner, they represented capital contributions to the corporation. Findings of Fact Some of the facts are stipulated, are so found, and the stipulation is included herein by this reference. The petitioners, Walter I. Dodd and Amelia Lee Dodd, were married and were residents of Raleigh, North Carolina, during the taxable years 1955, 1956 and 1957. For those years they filed joint individual income tax returns with the district director of internal revenue for the district of North Carolina. These returns were filed *339 on an accrual and calendar year basis. During the years involved in this case and for several years prior thereto, Walter I. Dodd (hereinafter referred to as petitioner) operated CarolinaOil Equipment Company as a sole proprietorship. This business, which employed approximately eight to ten persons in 1953, engaged in the sale of gasoline pumps, lifts, lubricating equipment, truck tanks, bulk plants and equipment necessary for dispensing petroleum products. Around 1953, petitioner was consulted by his son and Roy D. Wallace, Jr., an employee, about the possibility of selling oil. batteries and tires. At first, he was reluctant to enter this new venture, but upon the persuasion of his son and Wallace and after talking to his attorney, it was decided that these new products should be added and that a corporation should be formed for that purpose. Accordingly, on December 1, 1953, Carolina Oil and Battery Corporation was incorporated under the laws of the State of North Carolina with an authorized capital of $100,000 consisting of 1,000 shares of common stock with a par value of $100 per share. At the time of organization, such corporation issued 25 shares of common stock as follows: *340 Name
No. of Shares
Walter I. Dodd
5
Walter I. Dodd, Jr.
5
O. Carlyle Ray
5
E. A. Warren
5
R. D. Wallace, Jr.
5 Each paid in $500 for his stock. Walter I. Dodd, Jr. is petitioner's son, and O. Carlyle Ray and E. A. Warren are sons-in-law of petitioner. R. D. Wallace, Jr is not related to petitioner. E. A. Warren, petitioner's son-in-law, is not, and never has been, one of petitioner's employees. He became a stockholder in Carolina Oil and Battery Corporation because he married petitioner's daughter and in fulfillment of petitioner's desire that his children should share equally. Roy D. Wallace, Jr., who became president of Carolina Oil and Battery Corporation, had been a salesman with CarolinaOil Equipment Company for a little over two years prior to becoming a stockholder in Carolina Oil and Battery Corporation. He assumed the responsibility with the corporation of managing its battery sales. The corporation started business with a capital of $2,500. A two-ton Ford truck and a panel truck were purchased for use in the business at an approximate cost of four to five thousand dollars. Within a short time after the corporation was formed it became *341 necessary for petitioner to advance funds to it in order that it might purchase inventory and meet other current operating expenses. He continued to make these advances throughout the taxable years involved. Petitioner made these advances because he did not feel that the capital contributed by the stockholders and that which the corporation could borrow would be sufficient to get the business started and keep it going. No additional capital was contributed by the stockholders, with the exception of these periodic advances by petitioner. No collateral, notes or other evidences of indebtedness were provided for these advances, nor was any interest to be paid on these advances. Petitioner could only recover his advances if the corporation proved successful and it was his belief that it eventually would. Separate books were maintained for each of the businesses, and the suppliers for each business were different. Some of the customers of each were the same. The operations of both businesses were carried on from the same address and with the same employees. It was generally known by customers of the sole proprietorship and the corporation that petitioner was connected with both. *342 Sometime in 1955, the firm that supplied batteries to the corporation closed down its business and the corporation, in order to maintain good will, itself fulfilled guarantees on defective batteries. Some of the advances made by petitioner to the corporation were used for this purpose. Petitioner opened an account on his books in December 1953 labeled "Miscellaneous Loans Receivable - Carolina Oil and Battery Corporation." With respect to this account, the following schedule indicates the total debits and credits, the amount claimed as bad debts on the return and charged off by petitioner on his books for each year, and the debit balance at the close of business each year on December 31, 1953 to December 31, 1957, respectively: Year
Debits
Credits
Charged Off
Debit Balance 12/31
1953
$ 1,500.00
$ 1,000.00
$ 500.00
1954
13,584.94
4,678.36
9,406.58
1955
20,281.11
1,632.80
$14,027.44
14,027.45
1956
26,679.36
15,776.07
10,903.29
14,027.45
1957
27,730.99
18,084.55
9,646.44
14,027.45
The balance sheets of the corporation per books as of November 30, 1955, November 30, 1956 and November 30, 1957 are as follows: Assets
11/30/55
11/30/56
11/30/57
Inventories
$ 7,936.69
$11,038.06
$18,798.07
All other assets
7,520.88
6,592.92
10,571.20
Totals
$15,457.57
$17,630.98
$29,369.27
Liabilities
Accounts Payable - Walter I. Dodd
$24,777.83
$40,241.85
$59,749.48
Trade
3,486.21
101.43
Other Liabilities
3,046.81
3,109.00
149.32
Totals
$31,310.85
$43,452.28
$59,898.80
Capital Stock
2,500.00
2,500.00
2,500.00
Deficit
(18,353.28)
(28,321.30)
(33,029.53)
Totals
$15,457.57
$17,630.98
$29,369.27
*343 On the income tax returns filed for the years 1955, 1956 and 1957, petitioner claimed bad debts in the amounts of $17,134.16, $17,227.40 and $13,811.96, respectively. The bad debts claimed by petitioner consist of two categories as follows: 1955
1956
1957
Customers of Carolina Oil Equipment Company
$ 3,106.72
$ 6,324.11
$ 4,165.52
Carolina Oil and Battery Corporation
14,027.44
10,903.29
9,646.44
Total bad debts claimed
$17,134.16
$17,227.40
$13,811.96
The amounts claimed by petitioner as bad debts owed by customers of CarolinaOil Equipment Company were allowed as as a deduction by the Commissioner, while the amounts claimed as bad debts on the Carolina Oil and Battery Corporation account were disallowed. Carolina Oil and Battery Corporation is still in existence with petitioner as its sole stockholder. He became sole stockholder at an undisclosed date when he "bought the stock back from the boys and incorporated the CarolinaOil Equipment Company and gave them double their stock that they had in the Carolina Oil and Battery Company." Advances by petitioner to Carolina Oil and Battery Corporation during the years 1955, 1956 and 1957 did *344 not constitute valid and existing debts from that corporation to petitioner, but were in the nature of capital contributions. Advances by petitioner to Carolina Oil and Battery Corporation were not worthless or partially worthless during the taxable years 1955, 1956 and 1957. Advances by petitioner to Carolina Oil and Battery Corporation during the years 1955, 1956 and 1957 were not made or incurred in the ordinary course of petitioner's trade or business. Opinion The petitioner's main contention is that the advances which he made to the corporation were ordinary and necessary business expenses of his own business, i.e., the sole proprietorship, inasmuch as the corporate business and the proprietorship were treated by him as one and the same, and if he had not paid the debts of the corporation his credit standing would have been destroyed and the proprietorship might have been forced out of business. On the other hand, the Commissioner argues that the advances were not ordinary and necessary business expenses of the petitioner, but in substance were capital contributions made by him to the corporation. We do not think the record supports the petitioner in this respect. *345 The petitioner, for a number of years prior to the taxable years, had been engaged as a sole proprietor in selling equipment necessary for dispensing petroleum products. The business had eight or ten employees. In 1953, two of the employees persuaded the petitioner to take on the sale of new products consisting of oil, batteries and tires. Instead of adding these products to the line of the proprietorship, a corporation was formed with an authorized capital of $100,000, consisting of 1,000 shares with a par value of $100 per share. Only 25 shares were ever issued and the corporation started business with but $2,500 capital. The petitioner did not feel that the original capital together with what could be borrowed from banks "was going to be sufficient" and "didn't think I should stop before we got started almost," so he made advances from the start to the corporation both for original equipment and inventory and other operating expenses. Over the years the petitioner carried these advances on his books as "Miscellaneous Loans Receivable" and the corporation carried them as "Accounts payable - Walter I. Dodd." No notes or other indicia of loans, such as collateral, due dates or interest *346 were provided for. The only way the petitioner could have been reimbursed for the advances was from the successful operation of the corporation. It never made profits during the tax years. Nevertheless the petitioner continued to make advances, eventually became the sole stockholder, and continued to operate the corporation, at least until the time of trial. The question as to whether the advances were ordinary and necessary business expenses of the petitioner or were contributions of capital to the corporation is essentially one of fact and although the matter may not be free from doubt it is our best judgment that they were intended to be at the risk of the corporate venture and so were capital expenditures and not ordinary and necessary business expenses of the petitioner. See American-LaFrance-Foamite Corporation v. Commissioner, (C.A. 2) 284 F. 2d 723, affirming a Memorandum Opinion of this Court. In reaching this conclusion we have not been unmindful of the petitioner's argument that the advances were made to protect his credit standing and in order to give "key employees" a share in the business, together with the fact that the sole proprietorship and the corporate *347 business were conducted from the same address, had substantially the same customers and the same employees. These arguments and factors, when considered in the light of cases such as Lutz v. Commissioner, (C.A. 5, 1960) 282 F. 2d 614, reversing a Memorandum Opinion of this Court and Allen, et al. v. Commissioner, (C.A. 7) 283 F. 2d 785 (Nov. 3, 1960), reversing in part a Memorandum Opinion of this Court, on which the petitioner strongly relies, and which hold that advances made under somewhat similar transactions are deductible expenses, have given us pause. Despite the skillful marshalling of testimony in this case to fit the cited cases, we have reached an opposite conclusion. Here we do not think the advances were "Expenditures by a taxpayer to protect an established business" such as were involved in the Allen case. Neither were they expenditures made to protect existing good will or prevent loss of earnings by petitioner's sole proprietorship. Rather, we think the advances here involved were made for the primary purpose of starting and keeping under way a new and undercapitalized corporation, that the repayment thereof depended on the success of the new *348 corporate venture and that they were never intended, except for purposes of this case, to be expenses of the petitioner's sole proprietorship. Certainly the advances were never shown on the petitioner's books or tax returns as expenses of his own business. On the books, they were labeled "Loans Receivable" and on the tax returns they were treated as bad debts. Our conclusion that the advances were intended to be contributions to capital also disposes of the petitioner's argument that the advances are deductible as business bad debts. If they are capital contributions they cannot also be debts. American-LaFrance-Foamite Corporation, supra.
Decision will be entered for the respondent.