Andrew M. SPHEERIS and Ismene A.
Spheeris, Petitioners,

v.

COMMISSIONER OF INTERNAL REV-
ENUE, Respondent.

No. 13093.

United States Court of Appeals
Seventh Circuit.

Dec. 13, 1960.

Rehearing Denied Jan. 25, 1961.

Maurice Weinstein, Milwaukee, Wis.,
for petitioners.

Joseph W. Townsend, Chicago, Ill.,
John Potts Barnes, MacLeish, Spray,
Price & Underwood, Chicago, Ill., for
amicus curiae.

Charles K. Rice, Asst. Atty. Gen.,
Charles B. E. Freeman, Lee A. Jack-
son, A. F. Prescott, Attys., Dept. of Jus-
tice, Washington, D. C., for respondent.

Before HASTINGS, Chief Judge, and
SCHNACKENBERG and CASTLE, Cir-
cuit Judges.

HASTINGS, Chief Judge.

This petition to review a decision of the
Tax Court of the United States raises
one central issue—the legal characteriza-
tion for income tax purposes of certain
payments made by Milwaukee Towne
Corporation (Towne) to taxpayer An-
drew M. Spheeris. Spheeris and his wife
Ismene, joint taxpayers and petitioners,
here contend that such payments were
loans by the corporation to them and as

such were not reportable income. The Commissioner argues that the payments were dividends and therefore constituted taxable income. The Tax Court held that the payments in question were dividends within the relevant statutes [1] and assessed deficiencies in petitioners' income tax for the calendar years 1953, 1954 and 1955 in the respective amounts of $18,908.66, $5,592.76, and $8,486.00.

The pertinent factual background of this case, as revealed in unchallenged findings of the Tax Court, may be summarized as follows.

In 1946, the Miller Theater Corporation was organized in Wisconsin by Andrew Spheeris and two brothers-in-law, C. J. Papas and S. J. Papas. The three divided the capital stock equally. Shortly thereafter, pursuant to an agreement with United Artists Corporation, the Miller Theater Corporation was reorganized to form the Milwaukee Towne Corporation. United Artists agreed to furnish Towne with motion pictures; in turn, it was permitted to purchase 200 shares of Towne's Class B stock. It further agreed to make loans to Towne. The 400 shares of Class A stock in Towne were to be purchased by the former owners of the Miller Theater Company.

The authorized capital stock of Towne has been held since November, 1946 as follows:

| Name | Class | No. of Shares |
|------|-------|---------------|
| A. M. Spheeris | A | 117 34/100 |
| Mary J. Papas | A | 77 22/100 |
| C. J. Papas | A | 78 22/100 |
| S. J. Papas | A | 78 22/100 |
| John Papas | A | 1 |
| B. C. Dolar, Trustee | A | 48 |
| United Artists | B | 198 |
| Edward Raftery | B | 1 |
| Rud. Lohrenz | B | 1 |
| Paul Lazarus, Jr. | B | 1 |
| Ralph Cramblett | B | 1 |

1. Internal Revenue Code of 1939, Sec. 115. Distributions by Corporations.

"(a) Definition of Dividend.—The term 'dividend' when used in this chapter * * means any distribution made by a corporation to its shareholders, whether in money or in other property, (1) out of its earnings or profits accumulated after February 28, 1913, or (2) out of the earnings or profits of the taxable year (computed as of the close of the taxable year without diminution by reason of any distribution made during the taxable year), without regard to the amount of the earnings and profits at the time the distribution was made." 26 U.S.C.A. § 115.

Internal Revenue Code of 1954, Sec. 316. Dividend Defined.

"(a) General rule.—For purposes of this subtitle, the term 'dividend' means any distribution of property made by a corporation to its shareholders—

"(1) out of its earnings and profits accumulated after February 28, 1913, or

"(2) out of its earnings and profits of the taxable year (computed as of the close of the taxable year without diminution by reason of any distributions made during the taxable year), without regard to the amount of the earnings and profits at the time the distribution was made. "Except as otherwise provided in this subtitle, every distribution is made out of earnings and profits to the extent thereof, and from the most recently accumulated earnings and profits. To the extent that any distribution is, under any provision of this subchapter, treated as a distribution of property to which section 301 applies, such distribution shall be treated as a distribution of property for purposes of this subsection." 26 U.S. C.A. § 316.

Since 1946, the ownership of all 400 shares of Class A stock, except for 48 shares held in trust for United Artists, has been in the hands of Spheeris and his family who have operated Towne as a close family unit.

During the years 1946–1949, Towne received substantial loans from various sources, including Spheeris, his father-in-law John Papas, United Artists, and other corporations. All these loans, which were repaid by Towne by mid-1952, were evidenced by promissory notes and bore interest of four per cent.

Beginning in 1953, Spheeris and other stockholder-members of his family withdrew funds from Towne for their personal use. No withdrawals were made on behalf of United Artists. Corporations which Spheeris and members of his family controlled also received funds from Towne during this period. It is indicated that such withdrawals were *not* made in proportion to the recipient's equity ownership of Class A stock.

These various withdrawals were entered in Towne's books as "Accounts Receivable—Miscellaneous." The entries on Spheeris' account were as follows:

| Date | Debit | Credit | Debit Balance |
|------|-------|--------|---------------|
| May 27, 1953 | $ 5,000.00 | | $ 5,000.00 |
| Sept. 30, 1953 | 15,000.00 | | 20,000.00 |
| Oct. 28, 1953 | 16,500.00 | | 36,500.00 |
| Mar. 31, 1954 | 5,000.00 | | 41,500.00 |
| Apr. 28, 1954 | | $23,547.27 | 17,952.73 |
| Apr. 28, 1954 | 25,000.00 | | 42,952.73 |
| Mar. 30, 1955 | 9,000.00 | | 51,952.73 |
| Apr. 27, 1955 | 5,000.00 | | 56,952.73 |
| May 24, 1955 | 3,000.00 | | 59,952.73 |
| Oct. 31, 1955 | 2,500.00 | | 62,452.73 |
| May 23, 1956 | | 5,000.00 | 57,452.73 |
| Nov. 30, 1957 | 1,500.00 | | 58,952.73 |

The sole cash credit reducing Spheeris' account in the amount of $5,000 was in 1956, *after* he was apprised that the present proceedings had begun. The 1954 credit of $23,547.27 was merely a bookkeeping transaction and did not represent a cash repayment by Spheeris.

None of the withdrawals was evidenced by promissory notes by Spheeris to Towne nor were they secured by any collateral. There was no provision for payment of interest to Towne; and, in fact, no interest was ever paid. No date of repayment was specified.

During the period in question, on advice of counsel, no formal dividends were declared by Towne. The Tax Court found that during such time there was doubt as to the tax effect on the corporation of a million dollar treble damage award it had received in an antitrust action. See, Milwaukee Towne Corp. v. Loew's Inc., 7 Cir., 1951, 190 F.2d 561. Further, the status of United Artists as a stockholder was in doubt, following notice given in 1954 by Towne demanding that United Artists return its Class B stock because of the latter's alleged breach of contract.

After notice by Towne to United Artists to return the Class B stock, the latter filed suit in 1954 against Towne charging that Spheeris and other officers had mismanaged the company and complaining of loans and advances made by Towne to Spheeris and other family stockholders. In answer to that complaint, filed prior to the instant proceedings, Spheeris and others admitted receiving loans from Towne. In addition

there was testimony before the Tax Court by Spheeris and S. J. Papas that the payments in question were at all times considered by them as loans which were intended to be repaid.

From 1952 to 1956, Towne had substantial earned surplus, and the withdrawals in question were taken from earnings and profits.

After considering all the above facts and weighing the credibility of Spheeris and his witnesses in such circumstances, the Tax Court made its ultimate finding that the payments in question were not intended to be repaid as loans, but rather were dividends within the scope of the relevant statutes.

■ In reviewing the Tax Court's determination that the payments in question were taxable dividends, the problem before us involves "mixed questions of law and fact." We may review the legal effect of the facts found by the trier of fact.[2] Ortmayer v. C. I. R., 7 Cir., 1959, 265 F.2d 848, 854. The primary facts here are not in dispute, and we are not called upon to determine whether they find sufficient support in the record or are clearly erroneous as was the situation in Zeddies v. C. I. R., 7 Cir., 1959, 264 F.2d 120, 126.

■ In cases involving payments to stockholders, subsequent to advances to their corporation, where it is disputed whether such advances were loans or capital contributions, we have held that the subjective intention of the parties is a major factor in determining the legal relationship for tax purposes. Jennings v. United States, 7 Cir., 1959, 272 F.2d 842. Ortmayer v. C. I. R., supra. Such intention may be ascertained from the testimony of witnesses and from objective manifestations of intent. No single indicium or criterion is conclusive. Arlington Park Jockey Club v. Sauber, 7 Cir., 1959, 262 F.2d 902. Similarly here, the legal relationship between the closely-held corporation and its stockholders as to *these particular payments* must be established by a consideration of all relevant factors indicating the true intent of the parties.

■ After examination of the relevant facts, we agree with the Tax Court that the legal effect of the payments in question was to provide dividends to Spheeris. Numerous objective facts support this conclusion: none of the withdrawals was evidenced by promissory notes or secured by collateral; no interest was charged or paid; no dates for repayment were set and the single repayment came after the instant proceedings were initiated; no dividends were declared; but withdrawals were taken from the closely-controlled corporation as Spheeris and his family needed funds; and finally, prior loans made to Towne were evidenced by promissory notes and repaid with interest.

Petitioners point to several factors they feel indicate a contrary result: the testimony of Spheeris and S. J. Papas, the accounting entries in Towne's books, the fact that withdrawals were not made in proportion to stockholders' proprietary interest, and the statement in Towne's answer in the 1954 mismanagement suit that the payments were loans. However, in the particular circumstances here, such facts cannot overcome the proper inference that Spheeris was taking advantage of his position in a closely-held family corporation to provide himself with disguised dividends with nothing more than an accounting entry that such payments were loans and with no obligation to repay.

The decision of the Tax Court is affirmed.

Affirmed.

2. Cf., the "clearly erroneous" standard of review indicated in Clarke v. C. I. R., 9 Cir., 1959, 266 F.2d 698, 710; Lengsfield v. Commissioner of Internal Revenue, 5 Cir., 1957, 241 F.2d 508, 510; Regensburg v. Commissioner of Internal Revenue, 2 Cir., 1944, 144 F.2d 41, 44, certiorari denied 323 U.S. 783, 65 S. Ct. 272, 89 L.Ed. 625.