Frank S. Howe and Mary Alice Howe v. Commissioner.
Howe v. Commissioner
Docket No. 3023-62.
United States Tax Court
T.C. Memo 1964-12; 1964 Tax Ct. Memo LEXIS 323; 23 T.C.M. (CCH) 55; T.C.M. (RIA) 64012; January 27, 1964
Towner Leeper, First National Bldg., El Paso, Tex., for the petitioners. L. Lyle Walker, for the respondent. FAY
Memorandum Findings of Fact and Opinion FAY, Judge: The respondent determined a deficiency in the petitioners' income tax for the calendar year 1959 in the amount of $2,135.57. The only issues for decision are: (1) Whether the respondent was correct in disallowing a business bad debt deduction claimed by petitioners in the calendar year 1959; and (2) Whether the petitioners are liable in 1959 for the tax on self-employment income. Findings of Fact Some of the facts have been stipulated, and the stipulation of facts, together with the exhibits attached thereto, is incorporated herein by this reference. The petitioners, husband and wife, filed their joint income tax return for the calendar year 1959 with the district director of internal revenue, Austin, Texas. Prior *325 to and immediately after World War II, Frank S. Howe (hereinafter referred to as petitioner) worked consecutively as a loan application investigator for about five different finance companies, and from 1947 to sometime in 1955 petitioner was an assistant vice-president of El Paso National Bank, El Paso, Texas. In his latter capacity, petitioner supervised the making of loans to persons engaged in the small loan business. On November 18, 1957, petitioner organized, pursuant to Texas law, Alamito Finance Company, Inc., (hereinafter referred to as Finance) a corporation which was to, and in fact did, engage in the business of making small loans, generally to persons who could not borrow money from other sources. The loans generally ranged from $5 to $50 in amount and were from 1 to 30 days in duration. A majority of the loans were payable within one week. In return for an initial investment of $3,000, petitioner received all but two shares, or 93.33 percent, of the outstanding stock in Finance, which he has retained at all times relevant hereto. This $3,000 investment constituted the entire extent of Finance's assets at the beginning of its operation. Petitioner, within the first month *326 and a half of Finance's existence, also transferred to Finance certain assets necessary for its business, namely, furniture and an automobile, having a basis in petitioner's hands of $4,635.80 and a fair market value of $3,446.86. Between November 18, 1957, and October 31, 1958, petitioner made a series of cash advances to Finance totaling $11,667.74 to enable Finance to meet its operating expenses. These cash advances have at all times relevant to this proceeding, been listed on Finance's books, and other of its financial statements, as liabilities. No evidence of indebtedness or security was given to petitioner in return for the advances and the advances did not bear interest. There was no indication on Finance's books or elsewhere that petitioner's advances were to be repaid as of a certain date, but petitioner anticipated recouping these advances within four years from the making thereof. In addition to being Finance's principal shareholder, petitioner served as its president at all times relevant hereto. On his income tax returns for the years 1957 to 1959, inclusive, he reported no salary or other income from Finance. On its corporate income tax returns for the fiscal years *327 ended October 31, 1958, and October 13, 1959, Finance claimed no deduction for compensation to its officers. Finance during the course of its operation did pay personal expenses and loans incurred by petitioner in the amount of $5,400.75. The parties have treated these payments as partial returns of petitioner's advances to Finance. On July 31, 1959, Finance discontinued operations. At that time it had about 210 loans outstanding with a principal balance of $4,316.58, plus accrued interest of $2,575.92. Finance initiated dissolution proceedings on September 11, 1959, and was dissolved on October 13, 1959. Sometime between July 31 and October 13, 1959, the aforesaid 210 loans were distributed by Finance to petitioner. In addition to the loans, Finance returned to petitioner the car valued at $1,080 and the furniture and fixtures valued at $141.50. Petitioner, in winding up the affairs of Finance, also assumed its liabilities in the amount of $55.52. As a result of the uncollectibility of his advances to Finance and the worthlessness of the 210 loans receivable, petitioner claimed a business bad debt deduction of $16,294.99. Respondent disallowed this deduction on the ground that *328 the advances were capital contributions, or in the alternative, were nonbusiness bad debts. Respondent conceded, however, that petitioner had sustained a capital loss in the year 1959 in the amount of $11,547.87. [1]
At about the time of Finance's dissolution, petitioner began to work as a real estate salesman. As such, during 1959 he earned commissions in the amount of $12,059.92. Opinion The first issue for decision is whether petitioner is entitled to a business bad debt deduction in the calendar year 1959 equal to (1) the amount *329 of his cash advances [2] to Finance (exclusive of his initial $3,000 investment) and (2) the value of certain loans or accounts receivable distributed to petitioner by Finance, which loans allegedly, became worthless during the year. As for petitioner's cash advances to Finance, respondent contends that they were contributions to capital, not loans, and that upon Finance's dissolution petitioner incurred a capital loss pursuant to section 165 of the Internal Revenue Code of 1954. [3] In the alternative, respondent maintains that petitioner has incurred a nonbusiness bad debt loss resulting in a capital loss pursuant to section 166. Whether advances to a corporation are contributions to capital or loans depends upon a balancing of a number of factors, no single one of which *330 is controlling. American-La France-Foamite Corporation v. Commissioner, 284 F. 2d 723, 724 (C.A. 2, 1960), affirming a Memorandum Opinion of this Court, certiorari denied 365 U.S. 881 (1961). Montclair, Inc. v. Commissioner, 318 F. 2d 38, 40 (C.A. 5, 1963), affirming a Memorandum Opinion of this Court. In the instant case, there is considerable evidence indicating that the cash advances were not genuine loans. To begin with, petitioner's business background, especially his activities at El Paso National Bank of supervising loans to persons engaged in the small loan business, suggests that petitioner was or should have been aware at the time Finance was organized that considerably more than his original $3,000 investment would be needed to conduct such a business. Furthermore, no security or note or other evidence of indebtedness was given by Finance in return for the advances; no interest was paid or accrued with respect to these advances; and no specific date of repayment was established. J. A. Maurer, Inc., 30 T.C. 1273, 1290 (1958); Lewis L. Culley, 29 T.C. 1076, 1088 (1958); Estate of Dominick F. Pachella, 37 T.C. 347 (1961), *331 affd. 310 F. 2d 815 (C.A. 3, 1962). However, insofar as the cash advances are concerned, we choose to rest our decision upon what we believe to be even more clear-cut grounds, namely, that they constitute nonbusiness bad debts and thus are deductible merely as short-term capital losses. [4] In order for petitioner to establish that he is entitled to a business bad debt deduction pursuant to section 166(a), he must prove (1) that he is engaged in a trade or business and (2) that the loss sustained arose from a debt incurred in connection with, and was proximately related to, such trade or business. George P. Weddle, 39 T.C. 493, 496 (1962), affd. - F. 2d - (C.A. 2, 1963); see also section 1.166-5(b), Income Tax Regs.
Although Finance was engaged in the business of lending money, and petitioner was its controlling shareholder and principal executive officer, it is well settled that the business of the corporation *332 is not the business of its stockholders or officers, Burnet v. Clark, 287 U.S. 410 (1932); Dalton v. Bowers, 287 U.S. 404 (1932). Furthermore, petitioner does not contend that he as an individual was engaged in the small loan business. Thus, it is apparent that petitioner was not derivatively or directly engaged in the business of lending money and that he cannot consequently sustain a business bad debt deduction on such a basis. Petitioner, relying on Trent v. Commissioner, 291 F. 2d 669 (C.A. 2, 1961), reversing 34 T.C. 910 (1960), contends, however, that he is engaged in the business of being an employee and that in this capacity he advanced funds to the corporation to enable it to earn money and pay him a salary. In Trent v. Commissioner, supra, the Court of Appeals held that loans made by an employee to his employer in order to retain his job were deductible as business bad debts when they subsequently became worthless. On the record before us, we are unable to conclude that petitioner, upon whom the burden of proof rests, was required by Finance, which paid him no salary, to lend it money in order to retain *333 his job. Whipple v. Commissioner, 373 U.S. 193 (1963); Eugene H. Rietzke, 40 T.C. 443, 450 (1963), on appeal (C.A. 4, Sept. 27, 1963, and Oct. 31, 1963). To the contrary, since petitioner owned 93.33 percent of Finance's stock, it is quite likely that petitioner's dominant motive for making the advances was to protect his investment. George P. Weddle, supra. Since petitioner has in our opinion failed to prove that his advances to Finance were proximately related to any trade or business in which he was engaged, we sustain respondent's alternative determination that the cash advances constituted nonbusiness bad debts. As for the 210 loans or accounts receivable distributed to petitioner by Finance in connection with its dissolution, petitioner claims (1) that when received by him they had an aggregate face value of $6,892.50 (a principal balance of $4,316.58, plus accrued interest of $2,575.92) and a fair market value of at least $3,446.25; (2) that these loans receivable became worthless before December 31, 1959; and (3) that petitioner is entitled to a business had debt deduction therefor in the amount of $3,446.25. Petitioner, however, *334 has in our opinion failed to meet his burden of proof that the loans or accounts receivable had any value at all at the time received by him. No evidence has been offered as to the exact date Finance distributed the loans to petitioner. Petitioner testified the loans were received by him upon Finance's dissolution. Although Finance ceased active business on July 31, 1959, dissolution proceedings were not initiated until September 11, 1959, and actual dissolution did not occur until October 13, 1959. Thus, according to the record, it is possible that the accounts were dormant from July 31, 1959, until sometime between September 11, 1959, and October 13, 1959. Petitioner testified that, in view of the short maturity of the loans and the category of borrowers, persons of low credit standing who could not obtain loans from other sources, the loans would be virtually uncollectible if permitted to lie dormant for 30 days. Moreover, petitioner has failed to proffer any evidence as to the age or collectibility of any of the loans prior to their distribution to him. Before petitioner is entitled to claim a bad debt loss deduction for the loans or accounts receivable distributed to him by Finance, *335 he must prove that they were not worthless at the time acquired by him. Russell Box Co. v. Commissioner 208 F. 2d 452, 455-456 (C.A. 1, 1953), affirming a Memorandum Opinion of this Court and Nathan Fink, 29 T.C. 1119, 1130-1131 (1958). Petitioner has failed to do this. Therefore, we sustain respondent's determination with respect to these loans. The final issue is whether petitioner, because of the fact he earned commissions totaling $12,059.92 while working as a real estate salesman during 1959, is liable for the tax on self-employment income. See sections 1401 and 1402. Petitioner's 1959 return does not indicate that any withholding taxes were paid on those commissions. Self-employment income is the gross income derived by an individual from any trade or business carried on by him, minus (1) the deductions attributable thereto and (2) certain exclusions. Section 1402(a) and (b). Working as a real estate salesman on a commission basis could, under proper circumstances, constitute a "trade or business" within the meaning of section 1402. See section 1402(c); James F. Coleman, 3 B.T.A. 835 (1926); and section 1.1402(c)-1, Income Tax Regs. *336 For purposes of the tax on self-employment income, the question of whether a taxpayer is an "employee" receiving "wages" or an independent contractor is determined by the same criteria applicable to the Federal Insurance Contributions Act. See section 1.1402(d)-1, Income Tax Regs. Under proper circumstances, commissions earned by a salesman can constitute self-employment income. Cf. Irene L. Bell, 13 T.C. 344, 350 (1949). Petitioner has offered no evidence to indicate that he was not engaged in the trade or business of being a real estate salesman on a commission basis for any part of the calendar year 1959, or that his work as a real estate salesman during that year was as an employee, rather than as an independent contractor. Petitioner, in fact, has failed to introduce any evidence contradicting respondent's determination. We, therefore, sustain respondent's determination as to the self-employment tax. Decision will be entered under Rule 50. Footnotes
1. The capital loss of $11,547.87 was computed as follows: ↩
Original cash investment
$ 3,000.00
Cash advances
11,667.74
Furniture and fixtures
1,453.54
1957 Chevrolet
1,993.32
Total
$18,114.60
Less: Your personal expenses
paid by the corporation
$4,409.08
Your personal loans paid
by the corporation
991.67
5,400.75
Balance - Investment and
net advances
$12,713.85
Received on dissolution 10-13-59: 1957 Chevrolet
$1,080.00
Furniture and fixtures
141.50
Loans receivable
No value
Liabilities assumed
($55.52)
$ 1,165.98
Capital loss sustained
$11,547.87
Amount allowable
1,000.00
2. In his petition filed with this Court petitioner claimed that his deductible advances consisted of cash advanced as well as the furniture, fixtures and automobile. However, at the trial petitioner's counsel stated that only the cash advances of $11,667.74 were being contested.↩
3. All section references are to the Internal Revenue Code of 1954, as amended unless otherwise noted.↩
4. Under the facts of this, it makes no difference whether the losses incurred by petitioner are found to be long-term or short-term capital losses in that petitioner incurred no short-term capital gains in 1959.↩