**ROAD MATERIALS, INC., Petitioner,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

**COMMISSIONER OF INTERNAL REVENUE, Petitioner,**

v.

**ROAD MATERIALS, INC., Respondent.**

**Nos. 12500, 12501.**

United States Court of Appeals
Fourth Circuit.

Argued Dec. 5, 1968.

Decided March 5, 1969.

As Modified May 5, 1969.

Richard L. Hirshberg, Washington, D. C. (LeRoy Katz, and Katz, Katz & Kantor, Washington, D. C., on brief) for Road Materials, Inc.

Stanley L. Ruby, Atty., Dept. of Justice (Mitchell Rogovin, Asst. Atty. Gen., Lee A. Jackson and Elmer J. Kelsey, Attys., Dept. of Justice, on brief) for Commissioner of Internal Revenue.

Before HAYNSWORTH, Chief Judge, and WINTER and BUTZNER, Circuit Judges.

BUTZNER, Circuit Judge:

The Tax Court held that advances made by the taxpayer, Road Materials, Inc., to Savage Construction Company were not deductible as bad debts, but instead were contributions to capital.[1] Upon the taxpayer's petition for review, we find no error in the Tax Court's decision, but we remand the case to determine whether the loss from the capital contributions can be offset against ordinary income under Int.Rev.Code of 1954, § 165(g) (3) [26 U.S.C. § 165(g) (3) (1967)].

C. N. Haynes is a president and principal stockholder of two family corporations: Road Materials, Inc., the taxpayer, and Haynes Construction Co., Inc. The taxpayer is primarily engaged in highway black-topping, or resurfacing. Hotmix topping is transported from its stationary asphalt plant at Bluefield, West Virginia to various construction sites. Because the topping must be laid at a temperature of 275 degrees, the taxpayer cannot work farther than 50 miles from its plant. Haynes Construction Co.

1. Road Materials, Inc. v. Commissioner, T.C.Memo 1967–187, 36 P.H.Tax Ct. Mem. 1007 (1967). The Tax Court also held, upon a concession made by the Commissioner, that the taxpayer was not subject to the accumulated earning tax, Int.Rev.Code of 1954, § 531 [26 U.S.C. § 531 (1967)]. In No. 12,501, the Commissioner seeks reversal and remand on this question only if we should reverse on the debt issue in No. 12,500. Since we have affirmed the Tax Court on the debt issue, the Tax Court's judgment that the taxpayer is not liable for the accumulated earning tax will be summarily affirmed.

is engaged in heavy road construction, which includes grading and laying concrete. It operates in West Virginia and neighboring states.

Haskell Savage, the superintendent of Haynes Construction Co., was such a valuable employee that the Haynes family decided to offer him an opportunity to acquire partial ownership in the business as an incentive for his continued employment. However, the large capitalization of Haynes Construction Co. and Savage's limited resources made it impossible for him to purchase a sufficiently large equity in the company. To remedy this, the Haynes family and Savage formed a new corporation, Savage Construction Co., Inc., capitalized at $10,000, in which Haskell Savage acquired a 35% interest. C. N. Haynes, the principal stockholder and president, planned to have Savage Construction Co. engage as a joint venturer in construction projects in West Virginia with Haynes Construction Co. and with the taxpayer. Savage Construction Co. and Haynes Construction Co. worked jointly on seven projects beyond the operating range of the taxpayer, but plans for the taxpayer and Savage Construction Co. to form joint ventures were never carried out.

From August 31, 1961 through August 31, 1963, C. N. Haynes arranged for the taxpayer to advance Savage Construction Co. $497,265.83 without security. The advances were shown on the taxpayer's books as "loans." They were entered on the books of the Savage Construction Co. as items payable to affiliated companies. However, there was no agreement by Savage Construction Co. to repay any of the advances on a date certain or within a reasonable time, and it did not execute any note or other written evidence of indebtedness. The taxpayer made no demand for interest or repayment of principal, and none was paid. During 1961 and 1962, serious illness of Haskell Savage, bad weather, and other difficulties plagued Savage Construction Co., and it became insolvent in 1963.

The taxpayer deducted the advances as bad debts on its 1963 return. However, the Commissioner determined that the advances did not create a bona fide debtor-creditor relationship, but instead were contributions to capital.[2] In sustaining the Commissioner's disallowance of the deduction, the Tax Court said:

"The following circumstances, which we consider are established by the record, persuade us that the advances in question did not, as a matter of economic reality and therefore for 'tax purposes' constitute a bona fide debt of [Savage Construction Co. to the taxpayer]: (1) there was no agreement by [Savage Construction Co.], in writing or otherwise, to repay any of the advances at a fixed or ascertainable maturity date or within a reasonable time, (2) no interest was payable or paid on such advances, (3) no security was asked or given for the repayment of such advances, (4) no repayment was ever made or demanded of any of such advances, (5) the funds advanced to [Savage Construction Co.] were placed at the risk of its business in that there was no reasonable expectation of repayment regardless of the success of the venture, and (6) no outside lender of money would have made similar unsecured advances * * *." 36 P.H. Tax Ct. Mem. 1015.

## I.

■■ At the outset, we must reject the taxpayer's suggestion that a review-

---

2. The code allows a deduction of a debt which becomes wholly worthless within the taxable year. Int.Rev.Code of 1954, §§ 161 and 166(a) (1) [26 U.S.C. §§ 161 and 166(a) (1) (1967)]. "Only a bona fide debt qualifies for purposes of section 166. A bona fide debt is a debt which arises from a debtor-creditor relationship based upon a valid and enforceable obligation to pay a fixed or determinable sum of money. A * * * contribution to capital shall not be considered a debt for purposes of section 166." Treas.Reg. § 1.166–1(c) (1959).

ing court is not subject to the restraints of the clearly erroneous test in determining whether advances constitute debt or contributions to capital. Congress has expressly provided that decisions of the Tax Court shall be reviewed "in the same manner and to the same extent as decisions of the district courts in civil actions tried without a jury * * *." Int.Rev.Code of 1954, § 7482(a) [26 U.S.C. § 7482(a) (1967)]. An appellate court cannot set aside a district court's findings of fact unless they are clearly erroneous. Fed.R.Civ.P. 52(a). And contrary to the argument of the taxpayer, a reviewing court is not free to draw such inferences and conclusions as it may deem proper when the evidence before the Tax Court is undisputed. In Commissioner of Internal Revenue v. Duberstein, 363 U.S. 278, 291, 80 S.Ct. 1190, 1200, 4 L.Ed.2d 1218 (1960), the Court said the clearly erroneous rule "applies also to factual inferences from undisputed basic facts * * *." Indeed, on the issue of whether advances constitute debt or capital, this court has recognized that the clearly erroneous rule applies to "ultimate factual inferences refined from undisputed subsidiary findings * * *." Jewell Ridge Coal Corp. v. Commissioner of Internal Revenue, 318 F.2d 695, 696 (4th Cir. 1963). It is within the confines of these familiar principles that we must appraise the taxpayer's specific assignments of error.

The taxpayer urges reversal for a number of reasons which may be grouped as follows: (1) failure of the Tax Court to give consideration to the undisputed evidence that proved an intention to create a debt; (2) the Tax Court's selection and emphasis of the factors which it deemed decisive; and (3) the

Tax Court's finding that the advances were not made to accomplish any business purpose of the taxpayer.

■■■ The fact that the advances were entered as loans on the books kept by the taxpayer and Savage Construction Co. does not conclusively prove they were loans. John Kelley Co. v. Commissioner of Internal Revenue, 326 U.S. 521, 698, 66 S.Ct. 299, 90 L.Ed. 278 (1946). Nor was the Tax Court required to accept the testimony of the taxpayer's witnesses that it was the intention of the parties to create a debtor-creditor relationship. Berthold v. Commissioner of Internal Revenue, 404 F.2d 119, 122 (6th Cir. 1968). Intention to create a debt cannot be so readily proved. Generally it depends upon whether contemporaneous facts, not testimony given years later, establish an unconditional obligation to repay the advances. 5 Mertens, Law of Federal Income Taxation § 3.03 (1963). In litigated cases the issue often is not free from doubt, and decision must be based on analysis of the entire record. See American-La France-Foamite Corp. v. Commissioner of Internal Revenue, 284 F.2d 723, 724 (2d Cir. 1960). This is especially required when the nominal debtor and creditor are controlled by the same person, and the arm's length dealing that characterizes the money market is lacking. For this reason, the substance of the transaction is controlling, not the form in which it is cast or described. Gilbert v. Commissioner of Internal Revenue, 262 F.2d 512, 513 (2d Cir. 1959). And, contrary to the taxpayer's claim, this is so even though the advances were evidenced by bookkeeping entries that West Virginia law recognizes as debt.[3]

■■■ In deciding whether Savage Construction Co. had an unconditional

3. The Commissioner and the taxpayer agree that valid indebtedness under state law usually is a prerequisite for recognition of debt under the Internal Revenue Code. See 5 Mertens, Law of Federal Income Taxation § 3.03 (1963). It does not follow, however, that an advancement qualifying as a debt under state law must be treated as a debt under the Internal Revenue Code. Cf. Industrial Addi-

tion Ass'n v. Commissioner of Internal Revenue, 149 F.2d 294, 295 (6th Cir. 1945). In an analogous situation, advances were held to be capital, although the Interstate Commerce Commission had authorized their entry on a railroad's books as debt. See Jewell Ridge Coal Corp. v. Commissioner of Internal Revenue, 318 F.2d 695, 697 (4th Cir. 1963).

obligation to repay the advances, the Tax Court rightly considered the factors questioned by the taxpayer. Lack of principal and interest payments, the absence of a maturity date, the doubtful prospects of repayment, the debt-equity ratio,[4] and the unlikelihood of obtaining similar unsecured loans from disinterested investors are pertinent criteria. Jewell Ridge Coal Corp. v. Commissioner of Internal Revenue, 318 F.2d 695 (4th Cir. 1963); Wachovia Bank & Trust Co. v. United States, 288 F.2d 750 (4th Cir. 1961); American-La France-Foamite Corp. v. Commissioner of Internal Revenue, 284 F.2d 723 (2d Cir. 1960).

The taxpayer urges that its advances were for a business purpose, and that the existence of this purpose proves the funds were loaned.[5] From among the many cases that hold advances constitute debt and not capital, the taxpayer has selected for emphasis American Processing & Sales Co. v. United States, 371 F.2d 842, 178 Ct.Cl. 353 (1967), and Byerlite Corp. v. Williams, 286 F.2d 285 (6th Cir. 1960). In both of these cases subsidiary corporations, receiving advances from affiliated corporations, transacted business as substitutes for the affiliates. From this the courts were able to perceive a direct business purpose that existed from the formation of the subsidiaries to the ultimate loss of the advances. Moreover, the subsidiaries repaid part of the advances in cash or by credits. This, of course, was more indicative of debt than capital.

We agree with the Tax Court that *American Processing* and *Byerlite* are not applicable. In the first place, Savage Construction Co. did not repay any advances to the taxpayer. Secondly, Sav-

age Construction Co. did not perform any work for the taxpayer as a substitute or even as a joint venturer. Although there was some hope—never realized—that both corporations might work jointly on construction projects, there was ample evidence from which the Tax Court could infer that the taxpayer did not make the advances to promote its own business. The testimony clearly indicates Savage Construction Co. was formed and operated to retain the services of Haskell Savage for Haynes Construction Co. Undoubtedly, the funds advanced by the taxpayer promoted the business of Haynes Construction Co. and its stockholders, who also controlled the taxpayer. But the relationship of Haskell Savage and the Savage Construction Co. to the business purposes of the taxpayer were at best peripheral. The fact that the taxpayer received neither business advantage nor interest from the advances lends support to the Tax Court's decision.

We conclude, therefore, that the Tax Court's findings of fact and the inferences it drew from the facts are not clearly erroneous and that it applied correct principles of law. Accordingly, its judgment must be affirmed.

## II.

The taxpayer claims in this court for the first time that if the $497,265.83 is not deductible as a bad debt, it should be considered an ordinary loss because the investment was in securities of an affiliated corporation within the meaning of Int.Rev.Code of 1954 § 165(g)(3) [26 U.S.C. § 165(g)(3)(1967)]. This issue raises factual and legal questions that should be considered in the first

---

4. While the Tax Court noted Savage Construction Co. was undercapitalized, it did not base its decision on this factor. It merely observed "that the ratio of claimed *debt to acknowledged risk capital* * * * is such that it in no way militates against the validity of our conclusion." See J. A. Maurer, Inc., 30 T.C. 1273, 1291 (1958).

5. The Commissioner suggests that it is questionable whether business purpose is

material to a determination of valid indebtedness. This may be true when interest is paid, or debentures carry a premium as in Nassau Lens Co. v. Commissioner of Internal Revenue, 308 F. 2d 39 (2d Cir. 1962), which the Commissioner uses to illustrate his point. But when, as here, no interest is payable, the existence of some other business purpose is relevant.

instance by the Tax Court, and to that end we remand.

In No. 12,500 the judgment of the Tax Court is vacated, and this case is remanded for further proceedings consistent with this opinion. The judgment in No. 12,501 is affirmed.