Katherine R. Lane v. Commissioner. Edward V. Lane and Gail M. Lane v. Commissioner.
Lane v. Commissioner
Docket Nos. 4157-67, 4158-67.
United States Tax Court
T.C. Memo 1969-178; 1969 Tax Ct. Memo LEXIS 120; 28 T.C.M. (CCH) 890; T.C.M. (RIA) 69178; Aug. 28, 1969, Filed *120 Dividends: Loans distinguished: Withdrawals by stockholders: Intent to repay; Evidence. - Petitioners' withdrawals of funds from dormart Panamanian corporation of which they were the only stockholders are taxable as dividends. George E. Link, One Eleven Sutter St., San Francisco, Calif. and Peter Anderson, 19th Floor, 111 Sutter St., San Francisco, Calif., for the petitioners. Eugene H. Ciranni, for the respondent. DRENNEN
Memorandum Findings of Fact and Opinion DRENNEN, Judge: Respondent determined deficiencies in petitioners' income taxes for the years 1961, 1962, and 1963 as follows: Docket No.
Petitioner
Year
Deficiency
4157-67
Katherine R. Lane
1961
$106,153.47
1962
26,482.86
1963
5,573.13
4158-67
Edward V. Lane and Gail M. Lane
1961
97,655.71
1962
26,489.71
1963
4,120.10
*121 The issue in these consolidated cases is whether certain withdrawals by Edward V. Lane and Katherine R. Lane from their wholly owned corporation were bona fide loans or whether they were taxable as dividend distributions. Katherine has conceded certain adjustments to taxable income made by respondent in the years 1962 and 1963 (docket No. 4157-67) and these concessions will be given effect in the Rule 50 computation. Findings of Fact Some of the facts were stipulated and they are so found. Katherine R. Lane was a resident of Portola Valley, Calif., on the date her petition was filed with this Court. She filed individual income tax returns for the years 1961, 1962, and 1963 with the district director of internal revenue, San Francisco, Calif.
Edward V. Lane was a resident of Glenbrook, Nev., and Gail M. Lane was a resident of Scottsdale, Ariz., on the date their petition was filed with this Court. Edward and Gail filed joint income tax returns for the years 1961, 1962, and 1963 with the district director of internal revenue, Reno, Nev.
Katherine and Edward were married in 1933 and they were divorced in 1958. Edward married Gail in 1958 and they were divorced in 1964. *122 Edward was employed by a construction firm shortly after he graduated from college in 1932 and remained with the firm until 1947, at which time he entered into the engineering neering and construction business under the name of E. V. Lane Company, a sole proprietorship. In 1951 the proprietorship entered into a contract with the U.S. Government to do construction work in Okinawa. On 891 February 25, 1952, due to this expansion in business, Edward organized two corporations to conduct the engineering and construction business. E. V. Lane Corporation, organized under the laws of Nevada, was formed to do business in the United States, while Laneco, Inc. (hereinafter Laneco), a Panamanian corporation, was formed to carry on the construction business in the east Asia areas. Both corporations have been wholly owned by Edward and Katherine since 1952. [1] Edward has been an assistant secretary and a member of the board of directors of Laneco since 1952. Katherine has been president of Laneco since April 4, 1955, and has been a member of its board of directors since 1952. Edward and Katherine have also been officers of the E. V. Lane Corporation since it was organized in 1952. *123 In about October 1952 Laneco took over the construction work in Okinawa and continued with that work until some time in 1958. In 1956 the U.S. Government determined that only employees of United States contracting firms were to have the use of and access to Government commissaries, post exchanges, recreational facilities, and hospitals. Laneco had a number of American employees who would be inconvenienced by this policy change. It was therefore decided that future work in Okinawa would be performed formed by E. V. Lane Corporation, the Nevada corporation. To perform the construction work, E. V. Lane Corporation leased equipment from Laneco. The work performed by E. V. Lane Corporation was not profitable and as of December 31, 1962, E. V. Lane Corporation was indebted to Laneco for a substantial amount of equipment rentals. During the years 1954 and 1956 Edward borrowed a total of $275,000 from the Canadian Bank of Commerce, Vancouver, British Columbia. The loans may be summarized as follows: Date
Amount
Jan. 6, 1954
$115,000
Apr. 14, 1954
30,000
Dec. 16, 1954
50,000
Apr. 10, 1956
80,000 Edward and Katherine had joint tax liabilities during the years 1954 *124 to 1956 in excess of the amounts borrowed. The proceeds of these loans were used in part for payment of these tax liabilities, in part for advances to E. V. Lane Corporation, and in part for other purposes. Edward paid interest on the bank loans at rates ranging from 3 1/2 percent to 5 1/4 percent. Laneco authorized its funds, which were deposited with the Canadian Bank of Commerce, to be pledged as collateral for the loans to Edward. This authorization appeared in resolutions of the board of directors of Laneco adopted on April 30, 1953, and on April 5, 1956. The latter action of the board of directors authorized a limit of $300,000 (raised from $250,000) to be pledged as collateral for the loans. By January 1961 Edward had paid over $50,000 in interest on the bank loans but had never made any payments toward principal. He became delinquent on some interest payment and, as of January 1961, he owed the bank the total amount of $305,622.77. In January 1961 the bank demanded repayment of the loan and unpaid interest, and since Edward was unable to make the payment the obligations were paid (as demanded by the bank) from the pledged deposit account of Laneco on the following dates: *125 Date
Amount
Jan. 10, 1961
$ 3,500.00
Jan. 24, 1961
295,000.00
Mar. 6, 1961
7,122.77
Edward and Katherine executed three demand notes (dated January 10, January 24, and March 6, 1961) payable to Laneco in the total amount of $305,622.77 with interest at 3 percent. These notes were secured by a pledge agreement executed by Edward on January 10, 1961 under which he pledged his assets to secure repayment of amounts he had received or which he might receive from Laneco in the future up to $500,000. The assets listed as pledged by Edward in this agreement had a value well in excess of the $500,000 limit and they consisted of cash, real estate, stock in Laneco and the E. V. Lane Corporation, and all of his personal property. No principal or interest payments have ever been made with respect to these notes. In 1961 Edward and Katherine were held liable for Federal income tax liabilities for the years 1953 and 1954 which, together with interest, were in excess of $200,000. See Edward V. Lane, 37 T.C. 188 (1961). In 1962 Edward and Katherine received $95,000 from Laneco, and in 1963 they received an additional $15,000 from that corporation. At least *126 a part of these funds was obtained by Laneco from E.V. 892 Lane Corporation. These amounts were used to partially pay the above tax liabilities. Payment on the 1953 and 1954 tax liabilities was made on an installment basis as provided by a payment agreement executed between the taxpayers (Edward and Katherine) and the Internal Revenue Service under date of March 23, 1962. As a part of this payment agreement the taxpayers agreed that any funds distributed to them in the event of the dissolution of Laneco would be applied to this indebtedness and they also pledged with the director of internal revenue all of their stock in the E. V. Lane Corporation and Laneco. During the years 1962 and 1963 a series of installment payments was made to the Internal Revenue Service in the total amount of $200,734.36. Edward and Katherine executed demand notes during 1962 and 1963 payable to Laneco with interest at 3 percent with respect to the amounts (totaling $110,000) received from Laneco during 1962 and 1963. No principal or interest payments have ever been made with respect to these notes. During the years 1954 through 1964 Edward and Katherine received salaries from E. V. Lane Corporation, *127 and during this same period the E. V. Lane Corporation both advanced amounts to Edward and Katherine and obtained loans from them as follows: *10 Year
Salaries
Amounts owed by
Edward
Katherine
E. V. LaneCorp. toEdward andKatherine
Edward and Katherine toE. V. LaneCorp.
1954
$24,000.08
$152,064.87
$ 1,112.65
1955
41,999.88
165,000.00
18,084.10
1956
41,999.88
165,000.00
48,590.23
1957
41,999.88
165,000.00
56,384.91
1958
52,000.00
$11,907.73
165,000.00
59,815.89
1959
74,200.00
12,230.81
165,000.00
72,794.91
1960
72,800.00
12,000.04
1 65,000.00
85,949.00
1961
72,800.00
12,000.04
165,000.00
93,243.00
1962
72,800.00
12,000.04
165,000.00
88,081.00
1963
72,800.00
12,000.04
215,000.00
94,256.00
1964
72,800.00
234,100.00
103,705.00
Since 1959 Laneco has been a dormant corporation and has not engaged in any business activities. Since 1960 the retained earnings of Laneco have always been in excess of $1 million and its only assets have been cash and accounts receivable. Pro forma balance sheets of Laneco as of April 30 of each of the years 1958-1962 and as of December 31, 1962, are as follows: *128 April 30, 1958
Assets
Cash
$ 278,482.61
Accounts receivable:
E. V. Lane Corpora- tion $334,468.33
Due on contract - retained 1.00 334,469.33
Materials inventory
35,502.25
Deposits and prepaid expenses
(3,390.72)
Plant camp and equip- ment $334,446.08
Less depreciation 269,124.91
65,321.17
Total assets $ 710,384.64
Liabilities
Capital stock
$ 28,000.00
Retained earnings 682,384.64
Total liabilities $ 710,384.64
April 30, 1959
Assets
Cash
$ 277,787.85
Accounts receivable:
E. V. Lane Corpora- tion $666,159.29
Due on contract re- tained 1.00
Due from others (6,397.50) 659,762.79
Deposits and prepaid expenses
2,891.26
Plant camp and equip- ment $319,719.47
Less depreciation 308,065.88
11,653.59
Total assets $ 952,095.49
Liabilities
Capital stock
$ 28,000.00
Retained earnings 924,095.49
Total liabilities $ 952,095.49
April 30, 1960
Assets
Cash
$ 277,027.65
Accounts receivable:
E. V. Lane Corporation 796,858.13
Total assets
$1,073,885.78
Liabilities
Capital stock
$ 28,000.00
Retained earnings 1,045,885.78
Total liabilities $1,073,885.78
April 30, 1961
Assets
Cash
$ 763.58
Accounts receivable:
E. V. Lane Corpora- tion $769,558.13
Officers-stockholders 305,622.77
1,075,180.90
Total assets $1,075,944.48
Liabilities
Capital stock
$ 28,000.00
Retained earnings 1,047,944.48
Total liabilities $1,075,944.48
April 30, 1962
Assets
Cash
$ 663.58
Accounts receivable:
E. V. Lane Corpora- tion $769,558.13
Officers-stockholders 317,634.88
1,087,193.01
Total assets $1,087,856.59
Liabilities
Capital stock
$ 28,000.00
Retained earnings 1,059,856.59
Total liabilities $1,087,856.59
December 31, 1962
Assets
Cash
$ 663.58
Accounts receivable: lE. V. Lane Corpora- tion $674,558.13
Officers-stockholders 419,452.61
1,094,010.74
Total assets $1,094,674.32
Liabilities
Capital stock
$ 28,000.00
Retained earnings 1,066,674.32
Total liabilities $1,094,674.32
*129 893 Profit and loss statements of Laneco, Inc., reflected a net profit from gain on the sale of assets, interest income, equipment, and building rental, and sale of materials in the amounts of $241,710.85 for the fiscal year ending April 30, 1959, and in the amount of $121,790.29 for the fiscal year ending April 30, 1960. They reflected net profit from interest income only in the amount of $2,058.70 for the fiscal year 1961, $11,912.11 for the fiscal year 1962, and $6,817.73 for the 8-month period May 1, 1962, to December 31, 1962. Neither Laneco nor E. V. Lane Corporation has ever declared a cash dividend. Respondent determined in his statutory notice of deficiency that Edward and Katherine each received a constructive dividend in 1961 from Laneco in the amount of $152,811.38 as a result of the payment by the corporation of their indebtedness totaling $305,622.77 to the Canadian Bank of Commerce. Respondent also determined Edward and Katherine each received constructive dividends in 1962 and 1963 from Laneco in the respective amounts of $47,500 and $7,500 as a result of their withdrawal from the corporation of the total amounts of $95,000 and $15,000 in 1962 and 1963. *130 Ultimate Finding of Fact The amounts received by petitioners from Laneco in 1961, 1962, and 1963 were constructive dividends and not bona fide loans. Opinion The issue is whether the withdrawals from Laneco in 1961, 1962, and 1963 in the respective amounts of $305,622.77, $95,000, and $15,000 are taxable as constructive dividends to Edward and Katherine or whether such amounts were bona fide loans to them from the corporation and hence nontaxable. The question is one of fact and depends upon all of the surrounding circumstances when the particular withdrawals from the corporation took place. Spheeris v. Commissioner, 284 F. 2d 928 (C.A. 7, 1960), affirming a Memorandum Opinion of this Court. Edward and Katherine were the sole stockholders of Laneco since its organization in 1952. Such control and complete domination of the corporation invite a close scrutiny of the situation. Elliott J. Roschuni, 29 T.C. 1193 (1958), affirmed per curiam 271 F. 2d 267 (C.A. 5, 1959). The controlling fact, however, is not the taxpayer's measure of control over the corporation, see Carl L. White, 17 T.C. 1562 (1952), but the intention of *131 the parties at the time of the withdrawals. William C. Baird, 25 T.C. 387 (1955). 894 A dividend is defined as any distribution of property made by a corporation to its shareholders out of its earnings and profits for the taxable year or out of its accumulated earnings and profits. See sec. 316, I.R.C. 1954. This definition is broad in scope and when coupled with the presumption that respondent's determination is correct, petitioners must establish affirmatively that the withdrawals were not dividends but were in fact loans. W. T. Wilson, 10 T.C. 251, affd. 170 F. 2d 423. The classic "debt" is an unqualified obligation to pay a sum certain at a reasonably close fixed maturity date along with a fixed percentage in interest payable regardless of the debtor's income or lack thereof. Gilbert v. Commissioner, 248 F. 2d 399. We do not believe strict adherence to this definition must be made in determining whether withdrawals by stockholders from their wholly owned corporations are loans or dividends, but it points up some of the differences between the two types of withdrawals. But while some variation *132 from the above formula may not preclude recognition of the withdrawals as loans, creating debts, too great a variation will of course preclude such recognition for tax purposes, see Sherwood Memorial Gardens, Inc., 42 T.C. 211, 228, affd. 350 F. 2d 225; Sayles Finishing Plant, Inc. v. United States, 399 F. 2d 214, 218 (Ct. Cl.), particularly where, as here, the withdrawals do fall within the broad scope of dividends as defined in the Code. And we add that the purported intentions of the parties, that the withdrawals be repayable loans, when evidenced only by the self-serving documentary evidence prepared by the stockholders and the stockholders' testimony, is not necessarily controlling under such circumstances. Petitioners argue that the following factors, which they say are fully supported by the evidence, are conclusive of the fact that the withdrawals were loans. The factors enumerated in petitioners' brief are: 1. Petitioners testified that they at all times regarded the notes as bona fide indebtedness which they always intended to, and still intend to, repay. 2. Petitioners executed notes evidencing the indebtedness. 3. Petitioners *133 gave security for the repayment of the loans. 4. The withdrawals or advances were not continuous but resulted from nonrecurring and emergency circumstances. 5. There were valid business reasons for Laneco to make the loans. 6. Petitioners from time to time filed financial statements with third parties which always reflected this indebtedness. 7. Laneco treated the withdrawals as loans on its books and records and financial statements. 8. There was a likelihood that the withdrawals could and would be repaid. 9. The board of directors of Laneco approved the withdrawals as loans and so recorded their approval in the minutes of their meetings. [2]
We recognize that the "paper" evidence and facts, if considered alone, might be sufficient *134 to support the conclusion that the parties intended that the withdrawals be loans and that they were in fact loans. However, such self-serving evidence all prepared under the direction and control of petitioners or their representatives, in one capacity or another, collapses under the weight of the objective evidence that amy be gleaned from the record in this case and the circumstances under which the withdrawals were made. We conclude that petitioners have failed to carry their burden of proving that these withdrawals were loans and not dividends. See Day v. Helvering, 121 F. 2d 856; Gilbert v. Commissioner, supra. We are cognizant of the difficult predicament petitioners find themselves in where every move they make to obtain funds to pay their obligations gives rise to additional tax obligations, but this a predicament of their own making. We must approach this issue realistically, bearing in mind that petitioners were in complete control of both Laneco and E. V. Lane Corporation and were thus in a position to obtain for their personal use and benefit the permanent use of the corporate funds, particularly those of Laneco, without a formal declaration *135 of dividends. 895 Petitioners originally borrowed money from the bank in 1954 and 1956 for their own personal use, in part at least to pay their personal tax liabilities. At the request of the bank, petitioners caused Laneco to pledge its funds in the bank to secure these loans. Petitioners made no payments on the principal of these loans between 1954 and 1961, despite the fact that they were receiving from $40,000 to $85,000 in salaries from E. V. Lane Corporation throughout the period. When the bank called the loan in January 1961 practically all of the cash held by Laneco was withdrawn to meet petitioners' obligations to the bank. At that time Laneco had been dormant for several years and, so far as the record shows, had no plans for becoming actively engaged in business again. However, it had accumulated earnings and profits of over $1 million; its assets were comprised entirely of cash and accounts receivable from E. V. Lane Corporation, and it had no liabilities. Again in 1962 and 1963 petitioners were in need of about $200,000 in cash to pay their liabilities for additional personal income taxes for earlier years, and they received $95,000 from Laneco in 1962 and $15,000 *136 in 1963 to partially pay these obligations. For some unexplained reason these funds were first transferred from E. V. Lane Corporation to Laneco and then withdrawn by petitioners from Laneco rather than being withdrawn directly from E. V. Lane Corporation. Petitioners gave Laneco three demand notes totaling over $305,000, with interest at 3 percent, in January 1961, to evidence the withdrawals made at that time, and also gave Laneco two demand notes, with interest at 3 percent, as evidence of the withdrawals made in 1962 and 1963. The withdrawals were reflected on Laneco's books as accounts receivable from petitioners and petitioners gave Laneco a collatepal agreement pledging all of their personal assets, including their stock in Laneco and E. V. Lane Corporation, as security for the notes. However, petitioners have never made any payments of either interest or principal on any of these notes, despite the fact that they continued to draw salaries totaling $85,000 per year from E. V. Lane Corporation. Furthermore, although they had previously pledged all of their stock in Laneco and E. V. Lane Corporation to secure their notes to Laneco, in a payment agreement executed by petitioners *137 in connection with the installment payment of their tax liabilities in March 1962, petitioners pledged all of their stock in Laneco and E. V. Lane Corporation to the director of internal revenue and also agreed to apply all funds they might receive from a liquidation of Laneco to the payment of this obligation. It thus becomes rather obvious that neither petitioners nor Laneco considered the so-called loans by Laneco to petitioners to have many of the attributes of the classic debt - an unqualified obligation to pay a fixed amount at a reasonably close date, along with a fixed interest, regardless of petitioners' income or lack thereof. Petitioners testified that they have always considered the withdrawals from Laneco as loans, that they originally intended to and still intend to repay these loans, and that there is, or at least was, a reasonable likelihood that the loans could and would be repaid. Their claimed intent to repay the withdrawals is belied by the facts that they have apparently made no effort to do so for over 7 years, they have not honored their notes and apparently ignored their pledge agreement, and the corporation has apparently never demanded payment despite the *138 fact that the withdrawals are carried on its books as accounts receivable. With regard to the likelihood of repayment, we have no evidence of petitioners' personal wealth but must assume that if they intended to repay the withdrawals and were able to do so, they would have done so long before this. Petitioners claim that they had hoped to repay the withdrawals from the profits made on the Okinawa contracts but this failed to materialize. They claim they presently hope to be able to repay the withdrawals by selling either or both of Laneco and E. V. Lane Corporation. We have no evidence of the financial position of E. V. Lane Corporation but again must assume that it is not too sound in view of the fact that it has had an outstanding obligation of approximately $700,000 to Laneco for a number of years, and also owed the stockholders more than $100,000 at the end of 1963 and 1964; and we doubt that it would sell for much to third parties. We also doubt that Laneco, which has been inactive for about 10 years and whose only assets consist of accounts receivable from E. V. Lane Corporation and petitioners, could be sold for much cash. But in any event, these all are very uncertain and *139 contingent sources of funds to repay the withdrawals and hardly support petitioners' claimed intention to repay them "in all events." It is pretty obvious, however, that 896 if these withdrawals are recognized as loans when made, and petitioners cannot, or do not, repay them, then petitioners will have successfully withdrawn for their permanent use, almost one-half million dollars from the earnings and profits of Laneco without payment of any United States tax thereon, and Laneco will probably eventually just dry up and blow away. The other factors relied upon by petitioners to support their claim that the withdrawals were bona fide loans likewise can be given little weight. They claim that there was a valid business reason for Laneco to make these advances to petitioners, presumably so petitioners could continue to operate E. V. Lane Corporation and thus permit that corporation to pay its equipment rentals to Laneco. If such was the objective we see no reason why the advances could not have been made direct to E. V. Lane Corporation. While the financial statements filed by petitioners reflecting these withdrawals as liabilities, and the approval of the "loans" by the board of *140 directors of Laneco, might be entitled to some weight under different circumstances, they are entitled to little or no weight here because petitioners had complete control of this documentation, and furthermore we have no evidence other than petitioners' oral testimony concerning the financial statements filed with third parties. All of the paper documentation relied upon by petitioners could also have served as window dressing to cover the withdrawal tax free of the earnings of Laneco under these circumstances. Finally, petitioners point out, in support of the argument that these withdrawals were bona fide loans and not a systematic withdrawal of Laneco's earnings, that the withdrawals here involved were not continuous but resulted from nonrecurring and emergency circumstances. It may well be that Laneco was petitioners' only source of available cash to meet their obligations, but this alone does not change the character of the withdrawals. The fact is that petitioners withdrew all of Laneco's ready cash in these transactions and there was no possibility for any further systematic withdrawal of funds. The well was dry. For the above reasons we cannot find that petitioners have *141 carried their burden of proving that these withdrawals were bona fide loans, without which they do qualify as dividends. Consequently, we hold for respondent on this issue, and Decisions will be entered for the respondent in both docket numbers. Footnotes
1. The record does not reveal the number of shares owned by each. Petitioners do not argue that all the obligations referred to herein were not joint obligations of Edward and Katherine.↩
2. Petitioners also suggest on brief that if the advances are considered to be dividends, such dividends must have been paid in 1954 and 1956 when petitioners received funds (presumably from the bank). This argument is not pressed by petitioners and we do not believe it merits extensive discussion here. Petitioners received funds from the bank in 1954 and 1956, and there is no evidence they received any funds from Laneco in those years.↩