indicated, this is the ultimate question under the statutory standard of whether the lots involved in this case constituted "property held by the * * * [plaintiffs] primarily for sale to customers in the ordinary course of * * * [their] trade or business".

■ The fact that the plaintiffs made rather extensive expenditures in order to facilitate the sale of lots in The Orchards is entitled to consideration as a possible indication that the plaintiffs were engaged in the business of selling lots. Thompson v. United States, supra; Shearer v. Smyth, D.C.N.D.Cal.1953, 116 F.Supp. 230, 232, affirmed 9 Cir., 1955, 221 F.2d 478, certiorari denied 350 U.S. 840, 76 S.Ct. 78, 100 L.Ed. 749. However, this factor does not compel a conclusion different from that previously stated, since there is no single test that is determinative in all cases dealing with the problem of whether profits derived from sales of subdivided realty constitute capital gains or ordinary income. Garrett v. United States, supra, 120 F. Supp. at page 195, 128 Ct.Cl. at page 104; Mauldin v. Commissioner of Internal Revenue, 10 Cir., 1952, 195 F.2d 714, 716.

■ It is the policy of the income tax law "to relieve the taxpayer from * * excessive tax burdens on gains resulting from a conversion of capital investments, and to remove the deterrent effect of those burdens on such conversions". Burnet v. Harmel, 1932, 287 U.S. 103, 106, 53 S.Ct. 74, 75, 77 L.Ed. 199. In the present case, I believe that it would be inconsistent with the quoted policy to tax as ordinary income the profits realized by the plaintiffs in the course of liquidating an area of land that they had received by devise.

It is my opinion, therefore, that the profits realized by the plaintiffs in 1950 and 1951 from the sale of lots in The Orchards should be regarded as capital gains, rather than as ordinary income, for income tax purposes. It necessarily follows that the plaintiffs are entitled to recover in the present action.

**REPUBLIC STEEL CORPORATION**

v.

**UNITED STATES.**

No. 49535.

United States Court of Claims.

March 5, 1958.

---

Seymour S. Mintz, Washington, D. C., for the plaintiff. Thomas F. Patton, Cleveland, Ohio, John S. Brookes, Jr., O. R. McGuire, Jr., Robert K. Eifler and Hogan & Hartson, Washington, D. C., were on the briefs.

Harold S. Larsen, Washington, D. C., with whom was Asst. Atty. Gen. Charles K. Rice, for the defendant. James P. Garland, Washington, D. C., was on the briefs.

JONES, Chief Judge.

This is a suit for an income tax refund. The primary issue is whether at the time of the dissolution of a wholly-owned corporation the book indebtedness of such corporation owing to the plaintiff should be reduced by $1,250,000, being the amount represented by a promissory note. Disposition of this issue hinges on the promissory note's validity as indebtedness for purposes of bad debt and worthless stock loss deductions.[1]

The facts are set out in detail in the findings. Briefly they are as follows: As of January 1, 1930, The Berger Manufacturing Company, herein referred to as "Berger of Ohio", was a wholly-owned subsidiary of Central Alloy Steel Corporation, from which it purchased raw materials used in its business of manufac-turing, selling, and distributing steel desks, file cabinets, and other steel products.

Berger of Ohio, on January 7, 1930, formed a new corporation of the same name—The Berger Manufacturing Company—a New Jersey corporation (hereinafter called "Berger of New Jersey"). It was agreed on that date that Berger of New Jersey would carry on the manufacturing business previously conducted by Berger of Ohio, while the latter would continue with its sales and distribution business.

Under the agreement, Berger of Ohio transferred to Berger of New Jersey its manufacturing and fabricating plant near the city of Canton, Ohio, consisting of a tract of land and various factories, buildings, and structures situated on the land, and the machinery and equipment located in the plant, and the raw materials, materials in process and the finished products then in the plant.

Berger of Ohio also executed a promissory note in the amount of $1,250,000 "to be paid without interest when and as collected from accounts receivable." The note was made payable to Berger of New Jersey. The above-mentioned transfers were made effective as of January 1, 1930. By the terms of the agreement, Berger of New Jersey assumed part of the indebtedness of Berger of Ohio and issued to that company all of its capital stock. Central Alloy Steel Corporation became the sole stockholder of the new Berger Company and thus of both Berger companies when these newly issued shares were distributed to it by Berger of Ohio.

A single set of books for both Berger companies was maintained during January and February 1930, by the same

---

1. The plaintiff seeks a bad debt deduction under section 23(k) of the Revenue Act of 1936, c. 690, 49 Stat. 1648, 26 U.S.C.A. § 23(k). Its claim for a worthless stock loss deduction is based on section 23(f) of that act, c. 690, 49 Stat. 1648. In disregarding $1,250,000 of the indebtedness, the Bureau of Internal Revenue disallowed the plaintiff's claim for refund, relying on section 112(b) (6) of the Revenue Act of 1936, c. 690, 49 Stat. 1648, 26 U.S.C.A. § 112(b) (6). The latter section provides, under certain circumstances, for the nonrecognition of gain or loss upon the receipt by a corporation of property distributed in complete liquidation of another corporation.

individual who was treasurer and chief accounting officer of each of the companies. No intercompany accounts were kept, and sales and payments were entered on this single set of books monthly. However, in March 1930, the items were segregated and a separate set of books was established for Berger of New Jersey. These accounts for Berger of New Jersey were established retroactive to January 1, 1930.

On April 8, 1930, the plaintiff, Republic Steel Corporation, acquired as of April 1, 1930, in one transaction substantially all the property of Berger of New Jersey and Central Alloy Steel Corporation, paying therefor in the common stock of the plaintiff corporation. In the same transaction the plaintiff acquired all the capital stock of Berger of Ohio. Thereafter, Berger of New Jersey, redesignated as the Berger Division of the plaintiff, continued to do business with Berger of Ohio. At all times after that date, April 8, 1930, Republic Steel Corporation owned all the outstanding stock of Berger of Ohio until the dissolution of the latter company on November 10, 1937.

Upon the establishment of intercompany accounts in March 1930, the promissory note in the amount of $1,250,000 was retroactively entered as of January 1, 1930, in the books of Berger of New Jersey under "Notes Receivable". The books of Berger of Ohio reflected the note under the account "Notes Payable", also effective as of January 1, 1930. Amounts paid by Berger of Ohio to third persons on behalf of Berger of New Jersey during the months of January and February 1930, were debited and credited in the new intercompany accounts captioned "Accounts Receivable" and "Accounts Payable". Similar payments in March were also treated in this manner. On March 31, 1930, the "Notes Receivable" and "Notes Payable" accounts indicated the promissory obligation as being outstanding to the extent of $1,250,-000. And from April 1, 1930, to December 31, 1932, the accounts relating to the promissory note in the amount of

$1,250,000 remained unchanged, notwithstanding a continuation of payments to third persons, now on behalf of the Berger Division of Republic Steel Corporation, by Berger of Ohio, these payments being entered in the Berger Division's account captioned "Accounts Payable—Berger of Ohio".

On December 31, 1932, an agreement was made between the plaintiff and Berger of Ohio, by the terms of which it transferred to Berger of Ohio the business of its Berger Division. At this time there was a setoff of intercompany accounts (see finding 33) which had the effect of covering the note in the amount of $1,250,000 into the total book indebtedness owing by Berger of Ohio to Republic Steel Corporation. The note thereafter remained a part of such book indebtedness.

As of October 30 and November 1, 1937, Berger of Ohio transferred its assets, subject to its liabilities, to the plaintiff and Berger of Ohio was dissolved on November 10, 1937.

An assessment for additional income taxes was levied by the Collector of Internal Revenue against the plaintiff in 1943 for the taxable year 1937. The plaintiff paid such additional assessment and later filed a timely claim for refund of part of the taxes paid for the year 1937, basing its claim partially on the following grounds:

(1) that the plaintiff was entitled to a bad debt deduction of $1,160,085.88 by reason of the book indebtedness owed to the plaintiff by Berger of Ohio, which allegedly became worthless in the year 1937; and

(2) that the plaintiff was entitled to a deduction for a worthless stock loss of $1,538,998.02 by reason of its stock investment in Berger of Ohio, which allegedly became worthless in the taxable year 1937.

The bad debt loss asserted by the plaintiff was computed by subtracting the net value of the assets that were conveyed to the plaintiff by Berger of Ohio on the dissolution of the latter company

from the amount of the book indebtedness of Berger of Ohio to the plaintiff, such indebtedness including the amount of the note which Berger of Ohio in 1930 made to Berger of New Jersey in the amount of $1,250,000.

According to the plaintiff's computations, Berger of Ohio at the time of its dissolution owed the plaintiff $3,361,801.03, and the value of Berger's assets less its liabilities to third persons as of that date was $2,201,715.15. It is the difference between these two figures, that is, $1,160,085.88 which the plaintiff claims as a bad debt deduction.

If the Collector of Internal Revenue was correct in refusing to allow a deduction on account of the note in the sum of $1,250,000, then the book indebtedness reduced by that amount would be $2,111,801.03, which is less than the value of the assets at the time of the dissolution of Berger of Ohio on November 10, 1937. Under those circumstances the plaintiff would not have suffered a bad debt loss and the stock of Berger of Ohio would not have been worthless at the time of its dissolution.

Basically, an indebtedness sufficient to give rise to a bad debt deduction presupposes that the parties intended to create a debtor-creditor status. Clark v. Com'r, 18 T.C. 780. However, the declared purpose of the parties is not necessarily controlling. Of more significance is what the parties actually did. Thus, substance, and not form, governs in this type of controversy. Weiss v. Stearn, 265 U.S. 242, 44 S.Ct. 490, 68 L.Ed. 1001.

It is true separate corporations were formed and were in existence at the time the note was executed. And the plaintiff, in its brief, directs our attention to rulings by the Supreme Court wherein related corporations were treated as separate entities for Federal income tax purposes, citing Edwards v. Chile Copper Co., 270 U.S. 452, 455, 46 S.Ct. 345, 70 L.Ed. 678; Burnet v. Commonwealth Improvement Co., 287 U.S. 415, 419, 53 S.Ct. 198, 77 L.Ed. 399; Moline Properties, Inc. v. Com'r, 319 U.S. 436, 439, 63 S.Ct. 1132, 87 L.Ed. 1499; National Carbide Corp. v. Com'r, 336 U.S. 422, 429, 69 S.Ct. 726, 93 L.Ed. 779. However, the above authority is not to be understood as barring inquiry into the corporate form, Griffiths v. Com'r, 308 U.S. 355, 60 S.Ct. 73, 84 L.Ed. 447; Higgins v. Smith, 308 U.S. 473, 60 S.Ct. 355, 84 L.Ed. 406, nor in considering the relationship of affiliated corporations, Kraft Foods Company v. Com'r, 2 Cir., 232 F.2d 118. On the contrary, as is indicated in the Kraft Foods decision, careful scrutiny is invited where the tax consequences of arrangements between a parent corporation and its wholly owned subsidiary are involved. As the court remarked in that case, this skeptical attitude is prompted by the fact that the sole stockholder can deal as it pleases with the corporate entity it controls. Thus, the protection afforded to business transactions by an "arm's length deal" is absent in such situations.[2]

Close examination of the facts in this case reveals that the alleged autonomy of the Berger corporations was little more than a separate paper existence. No separate books of account were kept during the months of January and February; no intercompany accounts were maintained; Berger of New Jersey sold

---

2. In Kraft Foods Company v. Com'r, 2 Cir., 232 F.2d 118, the court found, on the facts of the case, the existence of a *genuine* transaction between a parent corporation and its subsidiary. On that basis, the court held as deductible "interest on indebtedness" debenture interest payments made by the taxpayer to its parent corporation.

This court had occasion to consider the question of corporate affiliation as bearing on a bad debt deduction in George E. Warren Corporation v. United States, 141 F.Supp. 935, 939, 135 Ct.Cl. 305, 312. There a finding of a bona fide debtor-creditor relationship between the plaintiff and its subsidiary resulted from an application of the following test:

"The common ownership factor requires a close scrutiny of the transaction to see that it was one of substance and one that could have reasonably been made between parties dealing at arm's length. * * * "

its products only to Berger of Ohio; the same man was treasurer and chief accounting officer of both companies; and the accounting department of Berger of Ohio maintained the single set of books for the two months' period. It is true that during the month of March 1930, a separate set of accounts was opened and maintained for Berger of New Jersey, but as of April 1, 1930, the plaintiff, Republic Steel Corporation, purchased not only the capital stock of Berger of Ohio, but also the properties of Berger of New Jersey and Central Alloy Steel Corporation. Whereas the Berger companies had formerly been wholly owned by Central Alloy, they now were under the control of Republic Steel.

The note here involved was executed at a time when Berger of Ohio was establishing a new corporation. The newly formed Berger of New Jersey possessed only the assets that had been transferred to it by Berger of Ohio. When it is seen that the net current assets of Berger of New Jersey would have been only $322,671.14 had the note not been issued, obviously inadequate for the type of business it was to engage in, it would appear to us that the primary design of the note was to bolster the balance sheet of Berger of New Jersey.[3] Our view would appear to be substantiated by the nature of the payments to Berger of New Jersey's indebtedness to third persons, as well as its then current operating expenses, by Berger of Ohio during the period January through March of 1930. These payments to third persons were made in total disregard of the note, being retroactively entered in the intercompany accounts captioned "Accounts Receivable" and "Accounts Payable".

Even following the plaintiff's acquisition of the controlling interest in the Berger companies in April of 1930, this pattern of resolute indifference toward the promissory note continued unchanged. From April 8, 1930, to December 31, 1932, Berger of Ohio advanced and transferred more than $2,000,000 to the plaintiff's Berger Division. Yet nothing was ever applied to the note. In effect, the note had been floating around on the books of both companies "as idle as a painted ship upon a painted ocean." The plaintiff, however, claims that this was a bookkeeping mistake, and that the note had actually been discharged by reason of payments made to third persons by Berger of Ohio on behalf of the plaintiff's Berger Division, or the former Berger of New Jersey. In answer to the plaintiff we need only observe that audits and inspections of the books were conducted at various times. Thus, it would indeed be strange that someone should not have discovered an error of such magnitude.

The plaintiff emphasizes the accounting setoff of December 31, 1932, pursuant to an agreement transferring the business of its Berger Division to Berger of Ohio, as effecting a discharge of the promissory note, and introduced expert testimony by accountants to substantiate this position. However, it is to be pointed out that this testimony, not uncontradicted by expert testimony entered by the Government, was based on the assumption that the note represented a valid indebtedness between the two Berger companies, and it was their intention that the note be paid. But this is the fundamental issue of the case. The circumstances before us indicate that no real obligation was ever contemplated. Hence the setoff of intercompany accounts, rather than discharging the promissory note, brought it within, to the extent of $1,250,000, the total book indebtedness owing by Berger of Ohio to the plaintiff. See finding 53.

We conclude in all the circumstances that an enforceable debt was never in-

3. The figure referred to is computed by deducting $1,250,000, the amount of the note, from $2,257,291.32, such figure representing the value of the raw materials and work in progress transferred to Berger of New Jersey plus the amount of the note. The resulting figure of $1,007,291.32, subject to current liabilities of $684,620.18, shows its net assets to be only $322,671.14.

tended or recognized by the parties in the execution of the promissory note, and the note did not evidence a valid and subsisting indebtedness of such a nature as could form the basis for a bad debt deduction for Federal income tax purposes.

But even if the note had been treated as an enforceable obligation, we think the plaintiff would not be entitled, under the facts of this case, to charge it off as a bad debt. At the time of Republic Steel Corporation's purchase of the corporate properties, as of April 1, 1930, the note was already outstanding. No doubt the plaintiff, in making the purchase, based the amount of its consideration to Central Alloy Steel Corporation on the net value of the three corporations, Central Alloy and the two Berger companies, so that in the final result it would make no difference to the plaintiff's taxable position whether the note was paid as between the two Berger companies. Thus, if the $1,250,000 note had been paid by Berger of Ohio the plaintiff would have acquired that much more in the way of value from Berger of New Jersey and that much less from Berger of Ohio. Conversely, if the note were not paid it would have that amount additional in the value of Berger of Ohio and that amount less in the ownership of assets of Berger of New Jersey. Either way, whether the money was in one pocket or the other, its net position was exactly the same. The plaintiff owned both pockets. In brief, the note was lacking in economic reality and had no tax basis.

For each and both of these reasons we conclude that the Collector of Internal Revenue was correct in refusing to recognize the book indebtedness owing to the plaintiff as the basis for a bad debt deduction.

It may be added that the asserted bad debt and worthless stock loss deductions have a common source—the promissory note. In view of our decision, the plaintiff has likewise failed to establish the foundation for a worthless stock loss deduction.

We hold that to the extent of $1,250,000 the book indebtedness owing to the plaintiff by Berger of Ohio was not a valid and subsisting debt within the meaning of section 23(k) of the Revenue Act of 1936; and that upon the liquidation of Berger of Ohio its assets exceeded its actual liabilities and that the plaintiff therefore realized no loss in its stock in Berger of Ohio within the meaning of section 112(b) (6) of the Revenue Act of 1936.

The petition will be dismissed.

It is so ordered.

REED, Justice (Ret.), sitting by designation, and MADDEN and LITTLETON, Judges, concur.

WHITAKER, Judge, took no part in the consideration and decision of this case.

Percy C. CHESTERFIELD
v.
UNITED STATES.
No. 49230.

United States Court of Claims.
March 5, 1958.

