Silver Brand Clothes, Inc. v. Commissioner.
Silver Brand Clothes, Inc. v. Commissioner
Docket No. 556-69.
United States Tax Court
T.C. Memo 1972-60; 1972 Tax Ct. Memo LEXIS 193; 31 T.C.M. (CCH) 250; T.C.M. (RIA) 72060; March 6, 1972, Filed. *193 Petitioner and three related corporations engaged in similar businesses were owned by the same stockholders. Petitioner had for many years been a volume purchaser of merchandise entitling it to certain discounts. For many years prior to July 31, 1964, when the related corporations ceased doing business, petitioner made volume purchases of merchandise, including therein merchandise required by the related corporations, which it transferred to them at its cost, without addition for administration or handling expenses. This practice enabled the related corporations to obtain merchandise at lower per unit costs, but resulted in no economic benefit to petitioner. No notes or other acknowledgment of debt were executed by the related corporations; no security for payment was given and no interest was charged or paid. Payments to petitioner were subordinated to the obligations owed to others and were dependent upon the related corporations making a profit. The history of each of the related corporations was principally one of losses. No outside lender or investor would have made such advances and, at least during the last five or six years of their existence, there was no reasonable expectation *194 that petitioner's current or past advances would be repaid. Held: The net amount of petitioner's advances as of July 31, 1964, did not constitute a bona fide debt deductible under the provisions of sec. 166. Held, further, such advances were not deductible as "ordinary and necessary" business expenses under sec. 162(a), or as business losses under sec. 165(a). J. B. Fisher, 1113-1115 Virginia ST. East, Charleston, W. Va., for the petitioner. Clarence E. Barnes, for the respondent. BRUCE Memorandum Findings of Fact and Opinion BRUCE, Judge: Respondent determined deficiencies in the income taxes of petitioner for the years and in the amounts as follows: Taxable Year
Ended
Deficiency
7/31/65
$ 2,245.44
7/31/66
21,391.75
The principal issue to be decided in this case is whether
petitioner should be allowed a bad debt deduction under section
[1] 166 for advances made to three related corporations. Depending
upon the outcome of this issue is the question of petitioner's
right to carryover losses in the taxable years ending in 1965 and
1966. Petitioner conceded by stipulation that in respect to the taxable *195 year ended July 31, 1965, the statutory notice of deficiency was timely mailed to petitioner within the meaning of section 6501(a) and thus, that the assessment and collection of the deficiency in income tax for the taxable year ended July 31, 1965, is not barred by the statute of limitations. Findings of Fact Some of the facts have been stipulated and the stipulated facts, together with exhibits attached thereto, are incorporated herein by reference. Petitioner is a corporation organized under the laws of West Virginia in 1945. Its principal office and place of business at the time the petition herein was filed was Charleston, West Virginia. It has, since 251 its inception, been engaged in the retail sale of men's clothing and furnishings in Charleston, West Virginia. Petitioner filed timely Federal corporate income tax returns for the years in question with the district director of internal revenue, Parkersburg, West Virginia. Petitioner was an outgrowth of a partnership conducted by Louis and Ben Sherman. At the time of incorporation of petitioner on March 21, 1945, the assets of said partnership were $265,748.05; the liabilities were $101,019.52; and the net worth was $164,728.53. *196 Upon incorporation of petitioner, Louis and Ben Sherman and members of their respective families received the total amount of $100,000 in common stock, consisting of 1,000 shares, and $64,728.53 due to Louis and Ben Sherman in equal amounts, as accounts payable. From its inception in 1945 and throughout the relevant period herein, 1945 to 1966, inclusive, petitioner was owned and controlled by Louis and Ben Sherman, and members of their families. Said brothers and members of their immediate families held all of the capital stock and interest in petitioner as follows: Number of Shares
Held at $100
Name
per Share
Ben Sherman
100
Louis Sherman
150
Ethel Sherman (Louis' wife)
100
Beverly (Louis' daughter)
125
Gordon (Ben's son)
100
Paul (Ben's son)
100
Stephan (Ben's son)
100
Miriam (Ben's wife)
100
Harvey (Louis' son)
125
In addition to the principal place of business at Charleston, West Virginia, during the relevant period herein, Silver Brand Clothes, Inc., conducted the same type of business at locations in Beckley, Logan, and Welch, West Virginia. The following corporations were formed by Louis and Ben on the dates indicated with initial capital amounts as shown. They were dissolved on the dates indicated. *197 Each of the corporations was owned and controlled by said brothers and members of their immediate families throughout the relevant period herein. They were organized to engage in the retail sale of men's clothing and furnishings. All business decisions for these corporations, in addition to petitioner, were made by Louis and Ben Sherman. Date of
Name
Incorporation
Capitalization
Date Dissolved
Sherman Brothers, Inc.
April 15, 1948
$36,000
April 28, 1966 (By
(Bluefield, W. Va.)
Court Order of Kanawha
County, W.Va.)
Silver Brand Clothes of
July 18, 1953
$30,000
April 30, 1964
Wheeling, Inc.
(Wheeling, W. Va.)
Silver Brand Clothes of
April 11, 1957
$25,000
April 30, 1964
A & H, Inc. (2 stores -
Ashland, Ky. &
Huntington, W.Va.)
Throughout their respective corporate lives, petitioner made extensive advances to the above corporations. The following schedule reflects the advances made by petitioner to the corporation indicated therein, as well as year-end balances allegedly owed by the respective corporations to petitioner year-end over-all net profits (or losses); and year-end balances (or deficits) of earned surplus for the corporation indicated: 252 Year-end
End of Yr.
Year-end
Balance (or
Receipts
Pymts.
Balance
Net Profit
deficit) of
FYE
frm Pet.
to Pet.
Owed Pet.
(Loss)
Earned
Surplus
Sherman Bros. Inc.
(Bluefield)
4/5/48 to 8/31/48
(597.14)
(497.14)
8/31/49
9,713.93
9,116.79
8/31/50
294.34
7,411. 76
8/31/51
(4,884.36)
2,435.59
8/31/52
3,628.14
6,063.73
8/31/53
4,736.95
6,988.38
11,244.16
7/31 /54
2,222.75
8,586.96
(1,627.26)
4,317.13
14,265.70
7/31/55
9,885.24
6,279.98
1,978.00
589.64
13,791.70
7/31/5 6
4,058.00
6,566.83
(530.83)
7,032.63
17,960.09
7/31/57
8,539.55
2,200.00
5,808.72
6,700.38
21,896.36
7/31/58
9,628.25
4,650.00
10,786.97
(1,498.97)
19,643.39
7/31/59
5,511.74
4,446.66
11,852.05
360.50
20,453.58
7/31/60
6,135.90
2,250.00
15,737.95
(6,085.37)
13,476.06
7/31/61
26,186.70
34,317.64
7,607.01
(19,061.17)
(948.43)
7/3 1/62
34,433.46
19,117.62
22,922.85
e22,627.16)
(23,735.68)
7/31/63
30,886.75
15,114.56
38,695.04
(10,527.51)
(37,826.90)
7/31/64
46,731.24
49,476.72
35,949.56
(33,125.03)
(68,206.17)
Silver Brand
Clothes of
Wheeling, Inc.
10/1/53 to 7/31/54
50,128.94
8,227.69
41,901.25
(10,928.53)
(10,928.53)
7/31/55
13,780.59
10,094.94
45,586.90
(3,622.75)
(14,551.28)
7/31/56
9,938.03
7,690.07
47,834.86
1,656.53
(12,894.75)
7/31/58
10,389.51
8,943.07
57,1 49.77
(380.98)
(9,567.43)
7/31/59
19,602.68
3,379.34
73,373.11
(30,629.98)
(40,197.41)
7/31/60
6,009.40
3,177.1 3
76,205.38
(18,391.54)
(58,644.46)
7/31/61
17,998.51
11,219.47
82,984.42
(22,878.58)
(81,543.04)
7/31/62
32,45 5.42
10,687.46
104,752.40
(19,285.54)
(100,836.08)
7/31/63
25,492.27
49,338.18
80,906.49
(24,845.72)
(125,900.49)
7/31/64
10,364.24
1,025.67
90,245.06
(231.17)
(126,131.66)
Silver Brand
Clothes of A & H,
Inc.
5/ 1/57 to 7/31/57
16,095.38
13,000.00
3,095.38
2,429.93
1,700.95
7/31/58
17,596.61
20,691.99
(12,967.33)
(11,266.38)
7/31 /59
17,938.31
12,968.59
25,661.71
(7,985.25)
(18,522.65)
7/31/60
7,852.66
1,500.00
32,014.87
(3,158.92)
(21,73 2.82)
7/31/61
10,130.58
11,450.00
30,695.45
(7,841.34)
(29,638.42)
7/31/62
38,083.93
10,577.37
58,202.01
(22,89 7.37)
(52,540.79)
7/31/63
27,930.98
65,184.08
20,948.91
(15,858.22)
(68,755.72)
7/31/64
17,602.69
1,732.75
36,818.85
3,296.05
(65,459.67)
*198 Petitioner made it a general practice to purchase nearly all the merchandise for the above corporations, as well as for its own stores. Thus, it would make one large purchase and bill each store for the amount of merchandise purchased for it. The reason for this was that petitioner's suppliers offered a reduced price on large volume purchases. As an example, Joseph H. Cohen, a division of Rapid American Corporation, is a manufacturer of different quality suits. One quality of suit is a lowerpriced model, but in order to purchase this line of suits, a buyer must purchase at least a minimum number in any one season. Anything in excess of the minimum amount would be sold at the lower price also, but in order to qualify at all, the buyer must purchase at least the minimum amount. Another example of this discount is shown by the plan that the Jarman Shoe Division of Genesco, Inc. offers to its customers. If a buyer purchases 300 pairs of shoes in one order, that buyer would qualify for a discount of 20 cents a pair. Any amount purchased above 300 pairs in the same season would also qualify for the discount. The purchasing seasons for both shoes and men's clothing usually run for sixmonth *199 periods. Petitioner was a large volume purchaser and qualified for the discounts under both of the above arrangements in all the years in question. It is still qualifying for these discounts at the present time. Petitioner purchased approximately 75 percent of the merchandise for all the stores of the related corporations. The procedure followed by petitioner was to 253 transfer the merchandise purchased for the specific store at cost basis to the related corporation with no charge for administration or handling. The transferee corporation would be billed for the merchandise on the petitioner's books. Petitioner also transferred cash to each of these corporations, the amounts and dates of which are not disclosed by the record herein. There was no promissory note or other legal document evidencing any of the transfers as loans between petitioner and the related corporation. In addition, these advances were unsecured and no interest was charged by petitioner on them. There was no regular schedule of payments made on these advances nor was there a fixed maturity date for their repayment. Repayment was subordinated by the related corporations to the payment of their recurring debts and *200 expenses, such as rent, utilities, etc., and apparently for direct purchases made by them. Payments on these advances were irregular and dependent upon the particular corporation's profits. On its return for the taxable year ended July 31, 1964, petitioner reported a loss in the total amount of $222,020.54. Included therein were net operating loss carryovers from July 31, 1963, and prior years in the amount of $49,667.77. Also included in the loss were claimed unpaid balances, as of July 31, 1964, which petitioner contends were owed to it by each of the following related corporations in the amounts indicated: Sherman Brothers, Inc.
$ 35,949.56
Silver Brand Clothes of Wheeling, Inc.
90,245.06
Silver Brand Clothes of A & H, Inc.
36,818.85
Total
$163,013.47 The total of $163,013.47 shown above was listed on petitioner's return for taxable year ended July 31, 1964, under the heading "OTHER DEDUCTIONS" and described as "Chargeoff, Advances to Related Companies (out of business)." On its return for taxable year ended July 31, 1965, petitioner deducted a claimed carryover loss from taxable year ended July 31, 1964, in the total amount of $222,020.54. Respondent disallowed the portion ($163,013.47) *201 attributable to unpaid "advances" to the corporations indicated in the above paragraph, which petitioner had claimed as a bad debt loss on its return for fiscal year ended July 31, 1964. As a result of the foregoing, respondent determined that petitioner was entitled to a net operating loss carryover for the taxable year ended July 31, 1965, in the total amount of only $59,007.07. Respondent further determined that petitioner had no net operating loss carryover available for use for petitioner's taxable year ended July 31, 1966. Petitioner, however, claimed an unused balance of $150,443.03 net operating loss carryover from fiscal year ended July 31, 1965, for use in fiscal year ended July 31, 1966. It is the above determinations by respondent, based upon the disallowance of a claimed bad debt loss in the amount of $163,013.47, which gave rise to the petition in the present case. Resolution of the issue concerning the allowance of a bad debt deduction will be dispositive of the issue regarding the amount of loss carryovers in the years in issue. Opinion The principal issue to be decided in this case is whether petitioner should be allowed a bad debt deduction under section 166 for advances *202 made to three related corporations. Petitioner contends that these advances were made for a valid business purpose, namely, to secure the discount petitioner received as a result of the large volume purchases it made for all the stores; that this resulted in a lower per-unit cost for the merchandise and correspondingly, increased the profit for all the stores involved; that the advances in question (the transfers of merchandise plus some cash) were the result of the large purchases made by petitioner for all the stores; and, inascrease profitability for petitioner, that when much as they were made in order to inthe businesses to which they were made were abandoned, a business bad debt deduction should be allowed. On brief, petitioner for the first time argues, in the alternative, that if the deduction is not allowable as a bad debt under section 166, it should be allowed as an ordinary and necessary business expense under section 162(a), or as a loss not compensated by insurance or otherwise under section 165(a). Respondent contends that the advances did not consitute a bona fide debt owing to the petitioner because a true debtorcreditor relationship was completely lacking between *203 the three related corporations and 254 petitioner. As a result, no bad debt deduction should be allowed; but rather, these advances should be considered as contributions to capital. Section 166 [2] *204 of the Code and section 1.166-1(c) [3] of the Regulations thereunder provide, in essence, that only bona fide debts qualify for deduction. A bona fide debt is defined in section 1.166-1(c) of the Regulations as one arising from a debtorcreditor relationship based upon a valid and enforceable obligation to pay a fixed or determinable sum of money; gifts or contributions to capital do not qualify as a debt for purposes of section 166. See also Gilbert v. Commissioner, 248 F. 2d 399, 402-403 (C.A. 2, 1957), which defined debt as "an unqualified obligation to pay a sum certain at a reasonably close fixed maturity date along with a fixed percentage in interest payable regardless of the debtor's income or lack thereof." The question of whether advances to a corporation create a valid debt or should be considered as a contribution to capital depends upon the particular facts and circumstances of each case. No single factor is conclusive. Road Materials, Inc. v. Commissioner, 407 F. 2d 1121 (C.A. 4, 1969), remanding for other reasons a Memorandum Opinion of this Court; Piedmont Minerals Company v. United States, 429 F. 2d 560 (C.A. 4, 1970); Gooding Amusement Co., 23 T.C. 408 (1954), affd. 236 F. 2d 159 (C.A. 6, 1956), certiorari denied 352 U.S. 1031; C. M. Gooch Lumber Sales Co; 49 T.C. 649 (1968), *205 remanded for entry of decision in accordance with compromise agreement of the parties, 406 F. 2d 290 (C.A. 6, 1969). Upon consideration of all the facts and circumstances presented herein and for the reasons hereinafter discussed, we are convinced that the advances in question did not arise out of a true debtor-creditor relationship between petitioner and the three related corporations. Consequently, as a matter of economic reality and therefore for "tax purposes," the net amount of such advances as of July 31, 1964, did not constitute a bona fide debt deductible by petitioner under the provisions of section 166. Petitioner and the three related corporations were separate corporate entities engaged in selling men's clothing and furnishings at retail in different cities in West Virginia and Kentucky. Louis and Ben Sherman and members of their families owned all of the stock of petitioner. They also owned all of the stock of each of the other three corporations. Petitioner owned none of the stock in either of the other corporations and neither of the other corporations owned any stock in petitioner. Louis and Ben made all business decisions for all four of the corporations. Petitioner *206 has been successful in the operation of its business apparently ever since its incorporation in 1945. The same business was operated successfully prior thereto when it was conducted as a partnership by Louis and Ben Sherman as evidenced by the fact that at the time of incorporation its assets were $265,748.05, its liabilities were $101,019.52, and its net worth was $164,728.53. According to the testimony of the representatives of two of its major suppliers, petitioner has been a volume purchaser of merchandise for many years and as such qualified for the discounts or lower prices offered by them for volume purchases. It so qualified during all of the years involved herein and continued to do so after 1964, when the three related corporations ceased doing business. After the related corporations were incorporated, petitioner purchased 75 percent or more of the merchandise required by each of them. The procedure followed was for petitioner to make one large purchase of various items, such as shoes, suits, slacks, and shirts, for which the suppliers offered discounts or reduced prices for volume purchases, including therein the amount of such merchandise required by the related corporations *207 as well as the amount required 255 for petitioner's own stores. The merchandise purchases for the related corporations would either be drop-shipped by the supplier to their respective stores according to petitioner's instructions, or would be trans-shipped to them by petitioner. Petitioners paid the supplier the entire cost of each such volume purchase. Petitioner then billed each of the related corporations for the amount of merchandise purchased for it, at petitioner's cost and without any charge for administration or handling expenses. This practice resulted in an economic advantage to each of the related corporations in that it enabled them to obtain merchandise at a greater profit than they would otherwise lower per-unit cost and thus to realize a have been able to obtain, since the amount of merchandise handled by each of them was not sufficient to qualify them for the discounts offered by the suppliers for volume purchases had they placed their orders individually. No economic advantage resulted to the petitioner, however, by reason of the inclusion of the merchandise requirements own. Petitioner was the operator of four stores of its own. It had been a volume purchaser of *208 merchandise for many years, and, although the evidence is not as precise as might be desired, it would have been entitled to the volume purchase discounts even if the requirements of the other corporations had not been included with the purchases for its own stores. The petitioner, upon whom the burden of proof rests, has not shown otherwise. Accordingly, contrary to petitioner's contention, the purchase and transfer of merchandise by petitioner to the three related corporations served no valid business purpose of the petitioner. We think it clear that Louis and Ben Sherman, as controlling stockholders, caused petitioner to make the purchases and transfers in question, not for the benefit of petitioner but for the benefit of the related corporations and consequently for the benefit of themselves and members of their families as the stockholders of such corporations. The fact that the transfers of the merchandise to each of the related corporations were made at petitioner's cost without any charge for administration or handling expenses, is further evidence of the lack of a business purpose. In addition to the merchandise transferred petitioner also made cash advances to each of the *209 related corporations, the amounts and dates of which are not shown. No notes or other written instruments were executed by the related corporations evidencing the transfers of merchandise and cash as loans. No security for payment was given and no interest was charged thereon by petitioner. There were also no fixed dates for payment and no regular schedule of payments was made. Although some payments were made by the related corporations the payments to petitioner were subordinated by the related corporations to the payment of expenses and obligations owed by them to others. Ben Sherman testified that payments to petitioner were irregular at best and depended upon whether or not the particular store made a profit; if no profit was made, no payment was made. Except for the year 1964, when Silver Brand Clothes of A & H, Inc. showed a net profit of $3,296.05, each of the related corporations showed net losses for each of the last five or six years of their operations, notwithstanding which petitioner continued to make substantial transfers in merchandise and/or cash to each of them. In view of all the facts and circumstances described above, we hold that the advances, consisting of cash *210 and merchandise, did not arise out of a true debtor-creditor relationship between petitioner and the related corporations and consequently, as a matter of economic reality and therefore for "tax purposes," the net amount of such advances as of July 31, 1964, did not constitute a bona fide debt deductible by petitioner under the provisions of section 166. In Road Materials, Inc., supra, which involved facts comparable to those in the present case, the Court of Appeals for the Fourth Circuit affirmed the holding of this Court that advances made by the taxpayer corporation to another corporation were not deductible as bad debts, but instead were contributions to capital. In that case, C. N. Haynes was president and principal stockholder in two family corporations, Road Materials, Inc. (the taxpayer) and Haynes Construction Co., Inc. He was also the principal stockholder in Savage Construction Co., Inc., which was formed in 1960 to retain for Haynes Construction Co. the services of its superintendent, Haskell Savage. Road Materials owned no stock in Savage Construction. In 1961, 1962, and 1963, C. N. Haynes caused Road Materials to make substantial cash advances to Savage Construction *211 Co., which were carried on its books as "loans." There, as in the present case, there was no agreement between the parties, in writing or otherwise, for the repayment of the advances at a fixed or ascertainable maturity date; no security 256 was given and no interest was charged or paid on the advances; the advances were placed at the risk of the business of the recipient corporation; and no outside lender would have made similar advances. There also, as in the present case, the main thrust of the taxpayer's argument was that the advances were made to effectuate a business purpose of the taxpayer. In answer to this argument, and in distinction of the cases relied upon by the taxpayer, this Court stated, and the Fourth Circuit agreed in Road Materials, Inc., supra (407 F. 2d, at 1125): A more important distinction is that petitioner in this case has failed to prove that the advances were made in order to promote its own business purposes. To the contrary it is our opinion that the record in this case requires a conclusion that the primary and motivating reason for making the advances to Savage was to promote the business interests of Haynes in which the controlling stock interest was *212 held not by petitioner but by individuals who also owned all of the stock of petitioner and whose individual interests were served thereby not as stockholders of petitioner but as stockholders of Haynes, and that any benefit which might be derived from such advances was speculative, incidental and unimportant. A similar conclusion, as we have found, is appropriate in the present case. The fact that in Road Materials the advances consisted of cash whereas in the present case the advances were of merchandise and cash is not a material distinction. In National Lead Co., 23 T.C. 988, 1002, reversed on other issues, 230 F. 2d 161 (C.A. 2, 1956), affd. 352 U.S. 313 (1957), advances of goods and services were held to be contributions to capital. See also C. M. Gooch Lumber Sales Co., supra, and United Engineers & Constructors, Inc. v. Smith, an unreported case ( E.D. Pa., 1959, 3 A.F.T.R. 2d 970, 59-1 USTC 9322), which found "no distinction between advancing money without hope of repayment and rendering a service without hope of being paid anything for it." See also Huntington Rubber Mills v. United States, an unreported case ( D. Ore., 1959, 4 A.F.T.R. 2d 5968; 60-1 USTC 9110), which involved *213 advances made by the taxpayer corporation to a related Canadian corporation whose controlling stockholders were also the taxpayer's manager and large stockholders. The advances were carried on the books of the taxpayer in an open account. No notes or other acknowledgment of debt were given by the Canadian corporation. The court denied any deduction for the advances, stating: With such a close relationship, the dealings of the two parties must be carefully scrutinized. Kraft Foods Co. v. Commissioner, 2 Cir. 1956, 232 F. 2d 118; Republic Steel Corp. v. United States, Ct. Cl. 1958, 159 F. Supp. 366. The advances were unsecured and no formal evidence of indebtedness was given. Plaintiff's bookkeeping treatment of the advances does not support the existence of a debt. Plaintiff could derive no material benefit from the advances. Any real benefit accrued to the stockholders common to both the plaintiff and the Canadian corporation. Plaintiff has not met the burden imposed upon it to show the existence of the debt. In addition to the reasons discussed above, the entire history of the related corporations reveals that, except for the early years of the Bluefield corporation, and especially *214 during the last five or six years of their operations, they were far from what might be considered successful businesses and the net balances of petitioners advances increased substantially. During the period from July 31, 1959 to July 31, 1964, petitioner made advances in merchandise and cash in the amount of $144,374.05 to the Bluefield corporation, $92,319.84 to the Wheeling corporation, and $101,600.84 to the A & H corporation. It received from these corporations $120,276.54, $75,447.91 and $90,444.20, respectively. Advances exceeded receipts by $24,097.51, $16,871.93, and $11,156.64, respectively. We think it obvious that no outside lender or investor would have made such advances under the circumstances here present and that at the time such advances were made there was no reasonable expectation that such advances or the net accumulated advances would be repaid. Losses resulting from advances made without reasonable expectation of repayment are not deductible as bad debts under the provisions of section 166. See C.M. Gooch Lumber Sales Co., supra, at 656-660; Gilbert v. Commissioner, supra, at 406-407. Cf. Ralph E. Wilson, 40 T.C. 543, 550-551 (1963); W.F. Young, Inc. v. Commissioner, 120 F. 2d 159 *215 (C.A. 1, 1941); Jones v. Commissioner, 357 257 F. 2d 644 (C.A. 6, 1966), affirming a Memorandum Opinion of this Court. [4]
On brief, petitioner claims, in the alternative, that the net advances in question are deductible as "trade or business expenses" under section 162 [5] or as a "loss sustained during the taxable year and not compensated for by insurance or otherwise" under section 165. [6]
The same reasoning which underlies our decision with respect to the bad debt issue under section 166 is also applicable to petitioner's claims under sections 162 and 165. Our holding that the transfers of merchandise by petitioner to the three related corporations served no valid business purpose of the petitioner *216 requires the conclusion that such transfers or advances were not "ordinary or necessary" expenses paid or incurred in carrying on petitioner's trade or business, within the meaning of section 162(a). Cf. C.M. Gooch Lumber Sales Co., supra. Nor were the losses which resulted from such advances deductible under the provisions of section 165(a). See International Trading Co., 57 T.C. - (Dec. 28, 1971); Richard R. Riss, Sr., 57 T.C. - (Dec. 30, 1971). In summary, we hold that no part of the net advances made by petitioner to the three related corporations, amounting to $163,013.47 as of July 31, 1964, was deductible by petitioner in the taxable year ended July 31, 1964, and consequently petitioner is not entitled to deduct as net operating carryover losses any part of such advances in the taxable years ended in 1965 and 1966. Decision will be entered for the respondent. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise stated.↩
2. SEC. 166. BAD DEBTS. (a) General Rule. - (1) Wholly Worthless Debts. - There shall be allowed as a deduction any debt which becomes worthless within the taxable year. (2) Partially Worthless Debts. - When satisfied that a debt is recoverable only in part, the Secretary or his delegate may allow such debt, in an amount not in excess of the part charged off within the taxable year, as a deduction. 3. § 1.166-1 Bad debts. * * * (c) Bona fide debt required. Only a bona fide debt qualifies for purposes of section 166. A bona fide debt is a debt which arises from a debtor-creditor relationship based upon a valid and enforceable obligation to pay a fixed or determinable sum of money. A gift or contribution to capital shall not be considered a debt for purposes of section 166. The fact that a bad debt is not due at the time of deduction shall not of itself prevent its allowance under section 166. * * *↩
4. See also Miles Production Co., T.C. Memo. 1969-274 (28 T.C.M. 1387↩, 1413), pending on appeal C.A. 5.
5. SEC. 162. TRADE OR BUSINESS EXPENSES. (a) In General. - There shall be allowed as a deduction all the ordinary and necessary expenses paid or incured during the taxable year in carrying on any trade or business, including - * * * ↩
6. SEC. 165. LOSSES. (a) General Rule. - There shall be allowed as a deduction any loss sustained during the taxable year and not compensated for by insurance or otherwise.↩